CASTLE ROCK IRRIGATION CANAL & WATER POWER COM-
PANY, APPELLANT, V. PHILIP JURISCH, APPELLEE.

FILED FEBRUARY 4, 1903.   No. 10,118.

1. Injunction: IRRIGATION COMPANY: CROSSING CANAL WITH LATERAL.
Injunction is the proper remedy for preventing one, without
authority so to do, from crossing the canal of an irrigation
company with a lateral for the purpose of carrying water to his
land from another canal.

2. Irrigation: APPLICANT FOR APPROPRIATION: CONDEMNATION: RIGHT
OF WAY: STATE BOARD OF IRRIGATION: PERMIT. An applicant
for the appropriation of the waters of the state for irrigation
purposes, can not prosecute the work and condemn a right of
way for that purpose until he has a permit from the state board
of irrigation to divert the water of the state to specific lands
described in his application.

APPEAL from the district court for Scott's Bluff county.
Action for a perpetual injunction to prevent the unau-
thorized crossing of an irrigation canal. Heard below
before GRIMES, J. Judgment for defendant. *Reversed.*

*Andrew G. Wolfenbarger, T. W. Morrow, Thomas F. A.
Williams,* for appellant.

*Heist, Mann, Wesley T. Wilcox* and *J. S. Halligan,*
contra.

SEDGWICK, J.

This plaintiff and appellant owns and is operating a
canal for irrigation purposes. In May, 1889, it began the
construction of the canal, and took the necessary steps
for the appropriation of the water of the North Platte
river, pursuant to the statute then in force, and in July,
1895, the county clerk of Scott's Bluff county having
transmitted a copy of plaintiff's notice of appropriation
to the state board of irrigation, the plaintiff filed its
claim with the state board, and afterwards, in January,
1897, the plaintiff's right to irrigate all lands included

Syllabus by court; catch-words by editor.

in its claim so filed, among which were the lands of the defendant Jurisch, was declared in the opinion of the state engineer and secretary of the board, which opinion was in September, 1897, affirmed by the state board of irrigation. In April, 1895, the defendant and others organized the Steamboat Ditch Company, and the defendant was the owner of some of the capital stock of that company. This latter company constructed a canal parallel with plaintiff's canal, the point of diversion of the water of the North Platte river being above that of the plaintiff company. The new canal being on the south side of the plaintiff's canal, and the defendant's land lying on the north side, the defendant began proceedings in the county court of Scott's Bluff county to condemn a right of way across the plaintiff's canal for a lateral with which to supply the defendant's land with water from the canal of the Steamboat Ditch Company.

The plaintiff began this action in the district court for Scott's Bluff county to enjoin the defendant from crossing the plaintiff's canal, and from further prosecuting his condemnation proceedings for that purpose. Upon the trial, the district court found that the defendant's proceedings in condemnation were irregular, and enjoined the defendant from further prosecuting those proceedings, or attempting to cross the plaintiff's canal thereunder, but refused to enjoin any further attempts to cross plaintiff's canal with the canal of defendant, and the plaintiff has appealed to this court.

1. The first contention is that this action can not be maintained because the plaintiff has an adequate remedy at law. The trial court found "that a lateral ditch, flumed or siphoned, can be built or constructed across the plaintiff's right of way at the locality intended by the defendant, and all damages sustained thereby can be compensated," and it is insisted that it follows that the plaintiff's remedy at law is complete. In *Beatty v. Beethe*,[*] 23 Nebr., 210, 211, it was held that: "If it is sought to ex-

[*] Opinion by REESE, C. J.

ercise the right of eminent domain, the statutory provisions must be followed, or the proceedings will be void and injunction will lie." If the defendant could proceed without first obtaining a lawful right so to do, we would have the two parties occupying the same location with their canals, and with no definite limits fixed to their respective rights. This would be a continuing injury to both parties, and neither party should be compelled to submit to such a condition.

2. The plaintiff contends that there is no right under the statute to construct irrigation works, and to take the property of others without their consent for right of way, until the state board of irrigation has granted a permit to divert the waters of the state, and that such permission can be granted only upon an application for that purpose, in which application the lands to be watered by the proposed improvement, and the amount of water appropriated therefor, must be specified. We think this contention is well founded. The trial court made specific and comprehensive findings of fact, which are not seriously questioned by either party. From these findings, it appears that the plaintiff company was duly organized under the irrigation laws then in force, and, after the enactment of the act of 1895 (Session Laws, 1895, ch. 69), complied with the provisions thereof, and its right to appropriate the waters of the North Platte river for the irrigation of the defendant's land was adjudicated in pursuance of sections 16 to 21 of the act, and no appeal was taken from that adjudication.

It also appears that defendant has never been granted a permit by the state board to appropriate any of the waters of the state for the irrigation of the land in question.

"The water of every natural stream not heretofore appropriated, within the state of Nebraska, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as heretofore provided." Section 42 of the act of 1895.

Section 16 of that act provided that the state board at its first meeting should "make proper arrangements for beginning the determination of the priorities of right to use the public waters of the state."

By section 19 it was provided that: "When the adjudication of a stream shall have been completed it will be the duty of the state board to make and cause to be entered of record in its office and [an*] order determining and establishing the several priorities of right to use the water of said stream, and the amount of the appropriation of the several persons claiming water from such stream and the character and kind of use for which such appropriation shall be found to have been made."

Section 20 makes it the duty of the board to determine each appropriation in its priority and amount by the time at which it shall have been made, and the amount of water which the works are constructed to carry, and the section provides that such an appropriator shall at no time be entitled to the use of more than he can beneficially use for the purposes for which the appropriation may have been made, and that no allotment for irrigation shall exceed one cubic foot per second for each seventy acres of land for which such appropriation shall be made.

Section 21 makes it the duty of the state board, "within thirty days after the determination of the priorities of appropriation to the use of water of any stream," to issue a certificate, to be transmitted to the county clerk of the county in which said appropriation shall have been made, "setting forth the name and post-office address of the appropriator, the priority number each of appropriation, the amount of water appropriated and the amount of prior appropriation and if such appropriation be made for irrigation, a description of the land to which the water is to be applied and the amount thereof."

Section 22 provides for an appeal from the determination of the state board to the district court.

---

* The enrolled bill reads "and,"—a patent error. The correction was made by the writer of the opinion.—W. F. B.

Thus the control of the waters of the state is provided for, and a state board established with exclusive original jurisdiction to apportion the waters of the state to the citizens thereof for beneficial purposes. When water is desired for irrigation it is necessary to show to this board what lands are to be irrigated, and authority is given to allot to such lands for irrigation one cubic foot per second for each seventy acres.

By section 28 it is provided that the state board "may upon examination of such application, indorse it approved for a less amount of water than the amount of water stated in the application, or for a less amount of land or for a less period of time for perfecting the proposed appropriation than that named in the application.    *    *    * If there is no unappropriated water in the source of supply, or if a prior appropriation has been made to water the same land to be watered by the applicant, the state board, through its secretary, shall refuse such appropriation and the party making such application shall not prosecute such work so long as such refusal shall continue in force."

Section 18 provides that all appropriations for water must be for some beneficial or useful purpose, and when the appropriator or his successor in interest ceases to use it for such purpose the right ceases.

It is contended in this case that the charges of plaintiff for water used upon defendant's land were exorbitant, and that defendant should not be compelled to take water from plaintiff at exorbitant charges; that the Steamboat Ditch Company is a mutual corporation for the purpose of obtaining water by the stockholders thereof for their own lands, and that they should be allowed the privilege of procuring water at as reasonable rates as they may be able by making the ditches for themselves. But it is not necessary, nor is it proper, to consider these questions in this proceeding. If the action of the state board in refusing to grant the defendant or the company in which he is a stockholder a permit to appropriate the waters of the

state was wrongful, the remedy was by appeal under the statute, and if the state board refused to act upon his application, when properly presented, its action thereon could undoubtedly be compelled in a proper proceeding for that purpose. Neither the defendant nor any one acting for him has complied with the laws of the state entitling him to an appropriation of the waters of the state. The state board has not allowed such appropriation. This refusal is not appealed from and is of full force, and the defendant "shall not prosecute such work so long as such refusal shall continue in force."

The plaintiff company is by the statute made, in some sense, the agent of the state in the distribution of its waters, and it is in the control of the state, so far as may be necessary to insure a lawful and just distribution of the water. It should not be allowed to make unreasonable charges for its services, nor unreasonably refuse to furnish water to the lands for which it has appropriated it; but these matters were not before the court in this proceeding.

The right of a private owner of land to condemn the property for a lateral to convey water to his land from the main canal of the company is much discussed in the briefs, but clearly, from the view we have taken of the principal point presented, this question is not involved in a determination of this case, since neither the defendant nor the company has been allowed an appropriation of the water of the state to irrigate the defendant's land.

The defendant, not having complied with the law, was not entitled to proceed with the contemplated work, and the injunction should have been allowed. The decree of the district court is reversed, with instructions to enter a decree enjoining the defendant as prayed.

REVERSED.

NOTE.—*Irrigation—History— Legislation — Judicial Construction — St. Raynor Law—Act of 1895—Wyoming Statute.*—Irrigation was known to the Egyptians as early as the fourteenth century, B. C. It was, probably, borrowed from Egypt by the Phœnicians, Carthaginians, Assyrians, Babylonians, Greeks and Romans; it was encouraged in Spain

by the Moors; and introduced into England by an Italian, one Palla-vicino. The management of irrigation meadows and watered gardens is mentioned by Cato, who wrote in the third century B. C. Irriga-tion has been practiced in China and India from prehistoric days. The Incas of Peru had a perfect system of irrigation long before the conquest of Pizarro.

*Nebraska.*—The first irrigation act—known as the St. Raynor law—was passed in 1877; it made irrigation canals internal improvements; and gave corporations organized to build the power to condemn land for right of way. Session Laws, 1877, p. 168. Section 1, article 1, of the act of 1889—Water Rights—Right of Way—provided for the right of appropriation of running water in a stream, canyon or ravine by a natural person, domestic company or corporation; a provision reserved the rights of riparian owners in all streams not more than fifty feet wide. Session Laws, 1889, pp. 503, 504. The act of 1895 resembles very closely the law of Wyoming. Session Laws, 1895, ch. 69; Revised Statutes of Wyoming, 1899, division 1, title 9, ch. 14, and other provisions. See in index under Board of Control, Ditches, Ditch Companies, Water.

*Wyoming.*—The supreme court of Wyoming has held that a water right acquired for the irrigation of lands and the conduit passes by the conveyance of the realty without being specifically mentioned (*Frank v. Hicks*, 4 Wyo., 502); that a landowner in possession of land under a desert-land entry, at the inception of the water right of a ditch owner, does not lose his claim for damage for the land taken for right of way for the ditch on account of a subsequent relinquish-ment of said entry and a contemporaneous entry of the same land as a homestead (*Clear Creek Land & Ditch Co. v. Kilkenny*, 5 Wyo., 38); that one who enlarges his ditch constructed across lands of another, is liable for the damage to the lands occurring by reason of the enlargement, notwithstanding right of way had been acquired for the ditch as at first constructed (*Clear Creek Land & Ditch Co. v. Kilkenny*, 5 Wyo., 38); that the waters of a spring which naturally flow into a certain river are to be treated as a part of the waters of the river, in determining the right to use (*Moyer v. Preston*, 6 Wyo., 308); that the common-law doctrine relating to the rights of ripa-rian proprietors in the waters of a natural stream, never did obtain in the state of Wyoming (*Moyer v. Preston*, 6 Wyo., 308); that the provis-ion which limits the time of appeal from the decision of the board, is jurisdictional and the limit can not be enlarged by the court or agree-ment of parties (*Daley v. Anderson*, 7 Wyo., 1); that a ditch owner who does not provide proper safeguards to prevent the stock of the owner of the land crossed by the ditch falling into a washout caused by the ditch, is liable (*Big Goose & Beaver Ditch Co. v. Morrow*, 8 Wyo., 537); that the doctrine of prior appropriation prevails in the state of Wyoming and is in contravention of the common-law rule of riparian rights (*Farm Investment Co. v. Carpenter*, 9 Wyo., 110); and the last case cited holds the legislation on the subject constitutional.

*Nebraska—History.*—The United States government first attempted

irrigation at the fort near Sidney, Nebraska, but no date is at hand. The first record of any irrigation company is of the Bay State Live Stock Company, which was organized and in operation in 1876, before the passage of the St. Raynor law. This company was located in Kimball county. Irrigation was an incident and not the object of the corporation. They afterwards complied with the statute; their notice is dated May 20, 1889. The utilized stream was Lodge Pole creek.

*Kansas v. Colorado.*—Reference is had to the note on page 156 of the 65th volume of the reports. In the case there mentioned as pending before the United States supreme court, the United States have intervened, claiming that a decision favorable to either Kansas or Colorado would interfere with the Reclamation Act of congress (1902). United States Compiled Statutes, Supplement, 1903, p. 218. This question of riparian and interstate rights is important to other states than Colorado and Kansas, for example.

1. Lake Tahoe, a body of water twenty miles long and more than 6,000 feet above sea level, is divided by the state line of California and Nevada. In this lake, Truckee river takes its rise; it flows for some distance in California, enters Nevada, where it flows for near 100 miles and empties into Pyramid lake. If the right of the sovereign state of California to the source and headwaters of Truckee river is supreme, she can make a desert of the best irrigated district in Nevada.

2. Bear river rises in Utah, flows into Wyoming, crosses again into Utah, returns to Wyoming, flows into Idaho, from thence again into Utah, and empties into Great Salt Lake. All the states—like Caesar's Gauls—differ among themselves in respect to their laws. Who shall solve this riddle of riparian rights?

3. Little Snake river crosses the boundary between Colorado and Wyoming eight times. But adjudicated rights in one state are ignored in the other.

4. The North Platte river rises in Colorado, crosses a corner of Wyoming, where it receives one-fourth of the drainage of that state, enters Nebraska on its western border, traverses the entire length of this state and empties into the Missouri, a river navigable to the sea. The situation is similar to the Arkansas river through Colorado, Kansas, Oklahoma and the state of Arkansas.

The rights of navigation on the mouth of a stream, may be enforced over the water-supply of its remotest tributaries. *United States v. Rio Grande Dam & Irrigation Co.,* 174 U. S., 690.

Would it not have been better if state lines had been run on physical rather than mathematical divisions? A difference of less than twenty miles, would have obviated the difficulties in regard to Bear river, already mentioned.

Probably the best living authority on irrigation is **Elwood** Mead of Berkeley, California.—W. F. B.