FARMERS CANAL COMPANY ET AL. V. WILLIAM FRANK ET AL.

FILED JUNE 9, 1904.   No. 13,370.

1. Irrigation: PETITION: JURISDICTION.  By the irrigation act of 1895, the right to the use of water for irrigation purposes is attached to the land to be irrigated, and an application to the state board of irrigation for a permit to appropriate water for irrigation, which does not describe the location of the proposed canal nor contain a description of the land to be irrigated thereby, is too vague and indefinite to authorize the board to act, and no jurisdiction is acquired thereby to issue any permit thereupon.

2. State Board: POWERS: DECISIONS: COLLATERAL ATTACK.  The powers of the state board of irrigation exercised under section 16, article II, chapter 93a of the irrigation act of 1895, are *quasi* judicial in their nature, and an adjudication by it of a right of priority of appropriation of water made before taking effect of the act of 1895, after proper notice, is final, unless appealed from, and cannot be collaterally attacked.

3. Abandonment of Right.  Under the facts in this case, *held*, that the right of the Farmers Canal Company and its successor, Roberts Walker, to the appropriation of water awarded under the adjudication of the state board of irrigation has not been lost by abandonment.

4. Nonuser: LIMITATIONS.  Nonuser must be continued for a time equal to the statutory limitation upon actions to recover the possession of real property, in order to lose the right of appropriation.

5. Constitutional Law.  The provisions of section 28, article II, chapter 93a, Compiled Statutes, *held* not to be inimical to any provisions of the constitution of the state of Nebraska.

ERROR to the district court for Scott's Bluff county: HANSON M. GRIMES, JUDGE.  *Reversed with directions.*

*Wilcox & Halligan,* for plaintiffs in error.

*Charles F. Manderson, W. A. Dilworth* and *Wright & Stout, contra.*

LETTON, C.

On the 14th day of April, 1902, William Frank, defendant in error herein, filed in the office of the secretary

of the state board of irrigation, his application for an appropriation of 2200 cubic feet per second of time of the water of the North Platte river for irrigating and other beneficial purposes, proposing to construct a canal about 150 miles in length and to irrigate about 150,000 acres of land. The point of diversion of the water and the line of the proposed canal being substantially the same as that of a canal, the construction of which had been begun by the Farmers Canal Company in March, 1888, but which had only been partially constructed to a distance of about 20 miles from the point of diversion and was only in actual use to such an extent as to water about 5,000 acres of land. In the application filed by Frank with the state board of irrigation, which application is made out upon a printed form furnished by the state board, the location of the proposed canal and the description of the lands which it is proposed to irrigate are set forth as follows:

"7th. That said ditch or canal will be *about 150 miles* in length, and pass through the following sections of land, as shown on the accompanying township plats, viz.: See plat herewith. (Describe each section through which the canal passes, stating township and range.)

"11th. That the proposed ditch or canal is to be built with the intention of supplying water to irrigate the following sections or quarter-sections of land, viz.: *All lands between the line of proposed canal and North Platte river, as shown by the accompanying plats* (give sections and quarter sections, stating number, township and range), amounting in all to *about 150,000* acres. (Total number of acres.)" The words in italics are written, the others are printed in the blank form.

Accompanying this application were four blank township plats, but these plats are totally devoid of any indication as to what township, county or state they are intended to represent, and contain no line, mark or tracing to indicate the location of any proposed canal, or anything to show the lands it is intended to irrigate. In fact they are an absolute nullity so far as giving any information

in regard to the location of the proposed canal or the description of the land sought to be reclaimed is concerned.

There are two conflicting ideas upon which the laws of the several states and territories relating to the use of waters for the purposes of irrigation are based. One is that any person or individual may appropriate surplus waters which have not theretofore been appropriated, and may use the same to irrigate such lands as he may see fit. This was the basis of our irrigation law in this state until the passage of the act of 1895. Laws 1895, ch. 69. This system tends to breed monopolies, and to lead to antagonisms, strife and dissension. Since the land in arid regions is useless for the purpose of agriculture unless water is applied to it, this doctrine makes the landowner dependent upon the owner of the water right and leads to gross exactions and abuses. The doctrine of private ownership of water for irrigation purposes, disassociated from the land to which it is designed to be applied, has been proved by long experience to be detrimental to the public welfare. It has proved productive of endless controversies and abuses, and has given rise to interminable litigation.

The other doctrine is that the right to the use of water should never be separated from the land to which it is to be applied. "Where this doctrine prevails, canals and ditches become like railroads, great semi-public utilities, means of conveyance of a public commodity, their owners entitled to adequate compensation for services rendered, but having no ownership in the property distributed." Report on irrigation in California, United States Agricultural Department, 1901. It is unnecessary to set forth here the advantages of this idea. By the adoption of the irrigation law of 1895, which was modeled upon the Wyoming law, this state adopted the latter policy, by which the right to use the water shall not be granted separate from the land to which it is to be applied, and that the right to use the water should attach to the land, and, when the land is sold, be sold with it; and, for this reason, the statute is

explicit in requiring a description of the land to be irri-
gated and the amount thereof to be set forth in the appli-
cation.

Section 28, article II, chapter 93a, Compiled Statutes
(Annotated Statutes, 6782), provides:

"Every person, association or corporation hereafter in-
tending to appropriate any of the public waters of the
state of Nebraska shall, before commencing the construc-
tion, enlargement or extension of any distributing works,
or performing any work in connection with said appropri-
ation, make an application to the state board for a permit
to make such appropriation. Said application shall set
forth the name and post office address of the applicant, the
source from which said appropriation shall be made, the
amount thereof as near as may be, location of any pro-
posed work in connection therewith, the time required for
their completion, said time to embrace the period re-
quired for the construction of the ditches thereon and the
time at which the application of the water for beneficial
purposes shall be made, which said time shall be limited to
that required for the completion of the work when prose-
cuted with diligence, the purpose for which water is
to be supplied, and if for irrigation *a description of the
land to be irrigated thereby, and the amount thereof,* and
any additional facts which may be required by the state
board. On receipt of this application, which shall be *of a
form prescribed by the state board* and to be furnished
by the secretary without cost to the applicant, it shall be
the duty of the state board through its secretary, to make
a record of the receipt of said application and cause the
same to be recorded in its office, and to make a careful ex-
amination of the application to ascertain whether it sets
forth all the facts necessary to enable the state board to
determine the nature and amount of the proposed appro-
priation. If such an examination shows the application in
any way defective it shall be the duty of the state board to
return the same to the applicant for correction.   *   *   *
Provided, however, That the state board, through its secre-

tary, may, upon examination of such application, endorse it approved for a less amount of water than the amount of water stated in the application, or *for a less amount of land* or for a less period of time for perfecting the proposed appropriation than that named in the application." (The italics are not in the statute but are inserted by the writer.)

The law further requires, upon the approval and allowance of an application, that the applicant shall file in the office of the state board, within 6 months thereafter, a plat which shall show, among other things, *the legal subdivisions of the land* upon which the water appropriated is to be applied. Further than this the approval of the application by the secretary may be for a *less amount of land* or less amount of water than asked for in the application; and the final certificate of appropriation provided for by section 21, article II, chapter 93a, Compiled Statutes (Annotated Statutes, 6775), is required to set forth a *description of the land to which the water is to be applied* and the amount thereof.

It will be observed that the application filed by Frank falls far short of complying with the requirements of the statute. It further disregards entirely the requests set forth in the blank form upon which the application is made. In the form furnished by the board, the applicant is requested to "describe each section through which the canal passes, stating township and range," and is further requested to give "sections and quarter-sections, stating number, township and range and total number of acres" of the sections or quarter-sections of land which it is intended that the proposed canal shall supply water to irrigate. None of this is done in Frank's application.

At the hearing before the board upon this application, protests were filed by the Farmers Canal Company and Roberts Walker who claimed to have a prior appropriation of water to irrigate the lands for a distance of 80 miles under the proposed canal; and a petition in intervention was filed by the Farmers Irrigation District, which had

filed a subsequent application for an appropriation of water covering a part of the same territory. At the hearing, an opinion and order was rendered by the board of irrigation in favor of William Frank, Roberts Walker and the Farmers Canal Company, which confirmed the rights of the Farmers Canal Company and Roberts Walker to an appropriation of water as provided in an order of the board of irrigation made January 9, 1897; granted the application of William Frank, subject to the rights of the Farmers Canal Company, under the aforesaid order, and dismissed application numbered 675 filed by the Farmers Irrigation District, for the reason that the lands described in said application were covered by the canal of the Farmers Canal Company and by the application filed by William Frank prior to the filing of the application of the Farmers Irrigation District.

From this judgment of the board an appeal was taken to the district court for Scott's Bluff county. Issues were made up and a trial had before said district court, whereupon the order of the state board of irrigation was reversed and modified so that Roberts Walker was allowed an appropriation of water to irrigate the lands lying under the completed portion of the canal of the Farmers Canal Company; the application of William Frank was allowed and approved for all the lands lying under the contemplated canal east and beyond the constructed portion of the Farmers Canal Company, subject to the rights of the Farmers Canal Company, and the application of the Farmers Irrigation District was denied and dismissed. From this judgment of the district court, the Farmers Irrigation District, Roberts Walker and the Farmers Canal Company have prosecuted error proceedings to this court.

The application of William Frank failing to describe specifically the course of his intended canal, and to identify the specific tracts of land to which it is his intention to apply the water which he seeks to appropriate, does not state sufficient facts to justify the state board of irriga-

tion to allow him any appropriation of water for irriga-tion purposes. The order of the state board granting his application is equally vague and indefinite, and fails to de-scribe the lands to which the beneficial use of the water is to be applied, and so likewise is the judgment of the district court. Indeed, neither of these attempted adjudi-cations could well be otherwise, since there is absolutely nothing in the application of William Frank, and nothing in the evidence, either before the state board of irrigation or the district court, which attempts to describe definitely and specifically a single tract of land which it is intended to irrigate. This being the case, neither the state board of irrigation nor the district court ever acquired jurisdic-tion to grant Frank's application. For these reasons, the application of William Frank should have been dismissed, and, since there has been a lack of jurisdiction to act since the first filing of the petition, we recommend that the judg-ment of the district court as to William Frank be reversed, but that, since his application was made in good faith, he be permitted to amend the same, if he so desire, without losing his right of priority.

There remains to be considered the issues raised between the Farmers Canal Company and Roberts Walker, on the one hand, and the Farmers Irrigation District, upon the other, and this will necessitate an extended examination of the facts as to the respective interests of these parties.

On the 16th day of September, 1887, the Farmers Canal Company, a Nebraska corporation, organized for the pur-pose of constructing an irrigating canal in Scott's Bluff and Cheyenne counties, hereinafter styled the company, posted notice of appropriation for the diversion of water from the North Platte river at a certain point in Scott's Bluff county, to the extent of 1142 6-7 cubic feet per second of time, to be used for the purposes of irrigation. The notice was duly filed for record in the office of the county clerk of Cheyenne county, at Sidney, Nebraska; Scott's Bluff county at that time being a part of Cheyenne county. On November 17, 1890, the same company posted notice of

additional appropriation of 200,000 cubic inches per second of time at the same point of diversion as the first notice, and on the same day filed the same with the county clerk of Scott's Bluff county with proof of the posting, and on March 12, 1895, the company posted another notice of appropriation at the same point of diversion, increasing the amount to be diverted to 225,000 cubic inches per second of time, and filed the same with the county clerk of Scott's Bluff county. All of said appropriations being for the purpose of irrigating lands lying under the proposed canal of the Farmers Canal Company. Under the plan of the company it was proposed to construct a canal 80 miles in length, of sufficient capacity to irrigate 80,000 acres of land. All of these notices were filed and appropriations made before the taking effect of the present irrigation law, which was passed and took effect April 9, 1895. The company began work upon its canal about the 1st day of March, 1888, and continued to work upon the same until about November 1, 1893. It erected a substantial headgate of sufficient size and capacity to irrigate the lands for which its appropriations were made, and expended in the erection of the headgate and on the construction of the ditch over $80,000. The canal was excavated the full width for about the distance of a mile from the headgate, and for the distance of 19 miles farther at about half the full size. Below the end of the excavated portion on the line of the survey, it excavated two detached portions, together making about two miles of ditch. All of this work was done before the 1st of November, 1893, and since that time no actual construction work has been done upon the canal, but from time to time certain repair work has been done, either by the company itself, or by the owners or occupiers of lands near the portion of the ditch in which water was running, at the procurement or by the consent of the company. The company has issued permanent water rights to cover about 2,000 acres upon lands lying between the headgate of the canal and the end of the 21 miles constructed. The whole amount of lands irrigable by the company from

the canal actually dug amounts to not more than 5,000 acres, but, on acount of a washout in the canal, it has been impossible to use water on all of said land. After the passage of the present irrigation law creating a state board of irrigation and providing for the determinination of the priorities of right to use the public waters of the state by the state board, the company filed its claim for appropriation in conformity with the notices of appropriation, and, on the 9th day of January, 1897, the secretary of the state board of irrigation adjudicated the claim and allowed the same.

The company in order to procure money for the carrying out of its enterprise issued bonds and gave a mortgage to secure the same, and, being unable to meet the payment upon said bonds, the bond holders, in 1902, foreclosed their lien in the United States circuit court, and the property was sold and conveyed to the appellant, Roberts Walker, who is now the owner of the franchise and property of the company.

After the passage of the act allowing the organization of irrigation districts, an irrigation district known as the Farmers Irrigation District was organized for the purpose of irrigating the land lying under the line of the Farmers Canal Company's proposed canal, and bonds of the district were voted to the amount of $400,000 with the purpose of raising money with which to purchase the rights of the Farmers Canal Company, and to complete the canal. The district, however, was unable to dispose of its bonds, and, while the negotiations between the company and the Farmers Irrigation District were pending, William Frank, defendant in error, filed his application. After the filing of the application of William Frank, and on the —— day of June, 1902, the Farmers Irrigation District filed with the secretary of the state board of irrigation its application for water to irrigate the lands within said district. The lands proposed to be irrigated in said application being about 50,000 acres lying below that portion of the canal of the Farmers Canal Company actually in operation, and

covering a portion of the same territory embraced in the application of William Frank, the line of the proposed canal being substantially the same as that of the Farmers Canal Company and of the proposed canal of William Frank.

The Farmers Canal Company contends that by the adjudication made in 1897, allowing its claim for the appropriation of water for a canal 80 miles long and allowing 1142 6-7 cubic feet per second, it became vested with the absolute right to an appropriation of water to that extent for the purposes of irrigation, and that it has a vested right therein which it has never abandoned nor lost by nonuser.

The Farmers Irrigation District asserts on the other hand, that the allowance of the claim to the Farmers Canal Company, in 1897, did not rise to the dignity of an adjudication of a perfected appropriation, but was merely an administrative order or allowance, only to be perfected by the actual application of the water to the land. It further contends that, even if the allowance of the state board constituted an adjudication, the Farmers Canal Company has lost all its rights beyond the line of the canal actually constructed and operated, by reason of abandonment and nonuser. It further contends that, under the constitution, an exclusive appropriation of water cannot be made so as to prevent the district from also making an application for water to irrigate the land within the district.

The first question which it is necessary to determine under these issues, is as to the status of the Farmers Canal Company and Roberts Walker with reference to the adjudication of priority of appropriation made by the state board of irrigation on the 9th day of January, 1897. This will involve a construction of certain sections of the act of 1895, found in sections 1-64, article II, chapter 93a, Compiled Statutes (Annotated Statutes, 6755-6886), being the general law relating to irrigation, and, in order to have. a proper consideration of the meaning and intent of the 'egislature in the enactment of such provisions, it will be

13

necessary to consider the whole course of legislation in this state upon this subject, and the construction given to similar statutory and constitutional provisions by the courts of other states and territories. On February 19, 1877, an act was approved providing for the organization of corporations for the purpose of constructing and operating irrigation canals, and giving such corporations the necessary powers to carry out the purpose of their organization. Laws 1877, p. 168. In 1889 another irrigation law was passed, repealing the law of 1877, but covering the subject more extensively and supplying the deficiencies which experience had shown to exist in the operation of the former law. Laws 1889, ch. 68. It is a matter of public knowledge that, after the passage of these acts, many irrigation enterprises were commenced in the western part of the state, both by private individuals and corporations. These interests became so extensive, and the subject of irrigation of such economic importance, that, in 1895, new and comprehensive laws were enacted covering the entire subject of the application of the waters of the state by private individuals and corporations to a beneficial use, creating a complete and harmonious system for the determination of the respective rights of persons interested, and providing an orderly method of administration. At the time of the passage of the act of 1895 many persons and corporations had acquired vested rights in the appropriation of water for irrigation purposes. It was not the intention of the legislature to create confusion and stir up strife, controversy and litigation over the water rights theretofore acquired, but it is manifest from a consideration of the law of 1895 that, among the main inducements to its passage, were the features requiring the adjudication of the priorities of appropriation upon all the streams of the state up to the time of the passage of the act, and the creation of a state board of irrigation whose records would evidence the priorities of title to the appropriation of water in such a public manner that no one might be misled. Publicity of

right and stability of title were matters which the legislature evidently intended to establish so far as lay within its power, and the provisions of the law under consideration seem admirably fitted to accomplish this object.

The first 27 sections of the act apply mainly to rights already vested, they provide for a division of the state of Nebraska into two water divisions and fix their boundaries, and for a state board of irrigation consisting of the governor, attorney general and the commissioner of public lands and buildings.

Section 16 is as follows: "It shall be the duty of the state board at its first meeting to make proper arrangements for beginning the determination of the priorities of right to use the public waters of the state, which determination shall begin on streams most used for irrigation, and be continued as rapidly as practicable until all the claims for appropriation now on record shall have been adjudicated. The method of determining the priority and amount of appropriation shall be determined by the said state board, which at its first meeting shall designate the streams to be first adjudicated."

Section 21 provides for the issuance of a certificate by the state board to the appropriators, setting forth the name and post office address of the appropriator, the priority number of each appropriation, the amount of water appropriated, the amount of prior appropriation and a description of the land to which the water is to be applied and the amount thereof.

Sections 22 to 25, inclusive, provide for appeals to the district court by any persons feeling themselves aggrieved by the determination of the state board.

Sections 26 and 27 provide for the transmission by the county clerk of each county of a transcript of all claims to the appropriation of water then on file in their respective offices to the secretary of the state board, and for the classification and arrangement of said claims by him.

It will be apparent from an examination of these provisions that it was the intent and purpose of the legislature

thereby to provide a tribunal and a method of procedure whereby the respective rights of priority of appropriation of all persons should be finally fixed, settled and determined in such a manner as to create a public record of all rights to the use of the waters of the state by appropriators up to the time of the act, and from which other persons desiring to appropriate water could learn the exact status of the title to the water in each stream.

Sections 28 to 31, inclusive, institute a new method of procuring appropriations of water up to that time not appropriated. The old method, by posting notices and filing copies of the same in the office of the county clerk, was done away with, and in its stead it was provided that an application should be made to the state board for a permit to make the appropriation. They provide for action upon this application by the state board, and for an appeal from the action of the board by any applicant feeling himself aggrieved; and also provide for a certificate that the application has been perfected in accordance with law in like manner as in the preceding sections.

Sections 32 to 64, inclusive, being the remainder of the act, consist mainly of general provisions creating a system of supervision of the use of the waters of the state, granting the right of condemnation to appropriators, providing penalties against the wrongful diversion of water, regulating the rights and duties of ditch owners with reference to public highways, and providing for many other matters of administrative detail which are not of importance in the consideration of this case.

It appears that after the organization of the state board of irrigation, in pursuance of the duties imposed upon it by section 16 of the act, the board proceeded to determine the priorities of right to use the waters of the North Platte river, after giving notice to persons interested. That, after the hearing upon the claim of the Farmers Canal Company, the state board, by its secretary and state engineer, entered the following order: "The claim set forth in this record is for a right to the use of a portion of the

water of the North Platte river for irrigation purposes, and is made by virtue of posting three notices of appropriation at the proposed point of diversion, No. 1 being posted on the 16th day of September, 1887, and filed for record in the office of the county clerk of Cheyenne county, at Sidney, Nebraska, on the 19th day of September of the same year. No. 14 was posted on the 17th day of November, 1890, and filed for record the same day. No. 43 was posted on the 12th day of March, 1895, and filed for record in the office of the county clerk on the 14th day of March, 1895, and commencing the work of excavation and construction upon a proposed ditch or canal on or about the 1st day of March, 1888.

"It appears from the record in the matter of this claim:

"1st. That the name adopted for the ditch or canal is the 'Farmers Canal.'

"2d. That the source of the appropriation is the North Platte river.

"3d. That the object of the appropriation is the irrigation of lands.

"4th. That the work of actual construction was begun on or about the 1st day of March, 1888.

"5th. That the priority of the appropriation dates from the 16th day of September, 1887, when the first notice of appropriation was posted at the proposed point of diversion.

"6th. (a) That the priority number of the appropriation for the water-shed is No. ...., Water Division No. 1-A: (b) That the priority number of the appropriation for the stream is No. ...., North Platte river.

"7th. That the ditch, or canal, heads on the north bank of the stream in the S.W. $\frac{1}{4}$ of the S.E. $\frac{1}{4}$ of Sec. 3, T. 23, N. R. 58, west of the 6th P. M., near the west line of Sec. 10, T. 23, R. 58.

"8th. That said ditch is about 81 miles in length and passes through the following described lands, viz.: Beginning at a point on the north side of the North Platte river, near where the river intersects the west line of sec.

10 in T. 23, R. 58, in Scott's Bluff county, Nebraska, on the N.W. ¼ N.E. ¼ of said section 10, thence through and over the E. ½ N.E. ¼ N.E. ¼ S.E. ¼ of said section 10 * * * (and describing about 140 other tracts). * * *

"9th. That said ditch or canal covers and reclaims the following described lands, viz.: a part of Lot 1, T. 22, R. 58; parts of Lots 1 and 2, in Sec. 11: Lots 1 and 2 and a part of N.E. ¼ N.E. ¼, Sec. 14 * * * (and further descriptions of land covering over three typewritten pages of legal cap) * * * amounting in all to about 80,000 acres.

"The claim is allowed subject to the following limitations and conditions, viz.:

"1st. The water appropriated shall be used for the purpose of irrigation.

"2d. The time for completing the application of water to the beneficial use indicated shall extend to September 1, 1904.

"3d. The amount of the appropriation shall not exceed eleven hundred and forty-two and six-sevenths (1142 6-7) cubic feet per second of time, neither shall it exceed the capacity of said ditch or canal, nor the least amount of water that experience may hereafter indicate as necessary for the production of crops in the exercise of good husbandry; and, further, said appropriation under any circumstances, shall be limited to one-seventieth (1-70) of one cubic foot per second of time for each acre of land to which water has been actually and usefully applied on or before September 1, 1904."

This order and allowance is the adjudication under which the Farmers Canal Company and Roberts Walker claim.

In the larger number of states and territories within the arid section of this country, the usual method of obtaining the right to an appropriation of water for irrigating purposes is by means of posting a notice at the point of diversion, filing a copy of such notice in the office of the county clerk of the county in which the point of diversion lies,

diverting the water and actually applying it to the beneficial use for which it is sought to be appropriated, at the place designated in the notice. The experience of many years shows that this method often led to strife, contention and sometimes to bloodshed, on account of the lack of a clear record of the rights of claimants. In order to remove this state of affairs, in Colorado and Washington, the legislature vested the district court with special jurisdiction, for the purpose of determining the respective priorities of rival appropriators of water, by a special proceeding somewhat in the nature of a bill of peace, bringing in all parties interested and adjudicating their rights and priorities. This method proved to be a great improvement upon the loose methods theretofore existing, and has proved exceedingly satisfactory to the people of these states.

Following this idea and improving upon it, the state of Wyoming, having experienced the same difficulties with reference to controversies between water claimants, in its constitution established a new system with reference to the matter of irrigation, and adopted an entirely new scheme for the adjudication of rights, the appropriation of water, and for the administration of rights to the public waters of the state. An act was afterwards passed by the legislature of that state to carry out these constitutional provisions. In this act there was created for the first time by any of the states or territories a state board of control, which was given *quasi* judicial powers in regard to the ascertainment and adjudication of the rights of appropriators of the public waters of the state which had vested up to that time, and to which board was further committed the allowance of claims to, and the general regulation of, all rights to water thereafter. The Nebraska statute of 1895 is substantially an adoption of the Wyoming system. While the state board of irrigation is differently constituted from the board of control in Wyoming, its powers and functions are the same, and the provisions of the section by which the board was directed to begin the deter-

mination of the priorities of right to use the waters of the state are identical with those in the Wyoming act.

In *Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 50 L. R. A. 747, 87 Am. St. Rep. 918, the constitutionality of this act was upheld, and, among other matters, the court held that the proceeding to determine priorities is not a part of the process by which an individual appropriation is completed, but the proceeding is instituted by the board in an official capacity, representing the public for the purpose of ascertaining the precise rights and priority of each appropriator, to the end that the public records may be furnished an accurate and defined statement thereof, and as an aid to adequate and effective state control of the public waters. A part of the object also is public recognition of an appropriation previously made and the issuance of documentary evidence of title. In *Crawford Co. v. Hathaway,* 67 Neb. 325, the same attack was made upon the constitutionality of the Nebraska law, and this court reached the same conclusion as the Wyoming court. It would seem that an adjudication made by the state board of irrigation upon a matter properly before it, and within the scope of its powers and duties, is final, unless appealed from to the district court. Its action stands upon a somewhat similar footing to that of county boards in passing upon claims against their respective counties. It has been held repeatedly that when a county board acts upon claims against the county, the amount of which is not specially fixed by the statute, its action is judicial in its nature and, unless appealed from, is final. Indeed, if the determinations of the state board of irrigation with reference to the priorities of appropriators are not of this final character, of what benefit or use would they be? For the board to attempt to decide a controversy or to establish a right, when, in fact, after it had acted, no right was established or controversy settled, would be a vain thing. *Castle Rock Irrigation Canal & Water Power Co. v. Jurisch,* 67 Neb. 377.

In Colorado the findings and adjudications of the district

court, while acting as a special tribunal to determine priorities and amounts of appropriation, are *res judicata.* *New Mercer Ditch Co. v. Armstrong,* 21 Colo. 357; *Platte Valley Irrigation Co. v. Central Trust Co.,* 32 Colo. 102. The proceedings before the board of control in Wyoming and the state board of irrigation in Nebraska, in determining priorities, are essentially the same as the proceedings before the district court in Colorado, when it sits for the purpose of adjudicating priorities, and their findings and adjudications are of like weight.

While the transcript of the proceedings before the state board, by which the priorities of appropriation of the Farmers Canal Company were determined in 1897, does not set forth in full the three notices of appropriation which were posted under the former law, nor fully set forth the original claim which was filed before the board, still the adjudication based upon the notices and the prior appropriation describes specifically the lands through which the ditch passes, and sets forth definitely the government subdivisions which the ditch or canal covers and reclaims, and there is no provision in the statute requiring any formal application to be made in such proceedings, or anything more than the copy of notices filed in his office to be furnished by the county clerk. A very large portion of the land covered and reclaimed is described as "a part of" a government subdivision. While this is somewhat indefinite, it will be taken to mean all that part of the government subdivision described which is capable of irrigation, and the description is not so indefinite, when it is taken and considered in connection with the actual construction of the canal and laterals, as to be incapable of identification.

In the order adjudicating the priority of appropriation of the Farmers Canal Company, the state board fixed a limit of time for the completion of the application of water to the beneficial use proposed. Since the board was acting, not upon an application for a permit to appropriate water under the provisions of sections 28 to 31, inclusive, of

the act, but derived its power to adjudicate priorities from sections 15 to 27, inclusive, and was acting under the provisions of those sections at that time, it had no authority in such a proceeding to make such order. Its sole duty was to ascertain and determine existing rights, not to grant new and conditional privileges in that proceeding, without an application for a permit. Its order limiting time, therefore, was null and void.

Though the board in adjudicating the claim of the Farmers Canal Company, in all probability, acted erroneously, and made an adjudication that the Farmers Canal Company was entitled to an appropriation greater than it was possessed of at that time, still, it had jurisdiction to hear and determine, and no appeal having been taken from its determination, its order allowing the appropriation is final and cannot be attacked collaterally. This conclusion is not in conflict with the principle laid down by the learned district court, that an appropriation is not complete unless the water is applied to a beneficial use within a reasonable time. All applicants for a new appropriation made after the passage of the act under the regulations laid down therein must comply with this rule, and complete the appropriation by applying the water to the land before their appropriation is complete, their right is vested, and they are entitled to a certificate.

The next question presented is, whether the Farmers Canal Company has lost its right to the appropriation by abandonment. There can be no question from the evidence that the company never actually gave up the possession of the ditch so far as it was actually constructed, nor had it or its successor Roberts Walker ever given up the idea or intention of completing the canal to the full extent of its appropriation. Abandonment is a mixed question of law and fact. There must be both a relinquishment of possession or nonuser of the right granted, together with the intention to abandon. Mr. Long in his work on Irrigation (sec. 85) says: "Abandonment is a matter of both intention and act, and consists in the

relinquishment of possession without any present inten-
tion to repossess. Mere nonuser is not in itself an aban-
donment, though, if continued for a sufficient length of
time, it may result in a forfeiture of the water right by
prescription."

Whether an act of a party constitutes an abandonment
of property previously occupied by him depends entirely
upon the intention with which it is done. An abandon-
ment of property held by possessory title takes place in-
stantly when the occupant deserts it without an inten-
tion of ever reclaiming it for himself, and careless of
what may thereafter become of it. A single act may be of
such character, and done in such manner, and under such
circumstances, that an intention to abandon may be in-
ferred from it. But mere absence from and nonuser of
the property do not prove an intention to abandon, al-
though conduct of that kind may continue unexplained for
such length of time as not to be consistent with any other
hypothesis. *Derry v. Ross,* 5 Colo. 295; *Sieber v. Frink,*
7 Colo. 148, 2 Pac. 901; *Richardson v. McNulty,* 24 Cal.
339; *Judson v. Malloy,* 40 Cal. 299; *Mallett v. Uncle Sam
Gold & Silver Mining Co.,* 1 Nev. 188; *Putnam v. Curtis,*
7 Colo. App. 437, 43 Pac. 1056.

The question is to be determined by the evidence in each
particular case, and, in the case at bar, we hold that the
evidence is not sufficient to show that the Farmers Canal
Company or Roberts Walker ever abandoned its appro-
priation for the uncompleted portion of the canal. As to
nonuser, we are of the opinion that, unless the nonuser
has existed for a length of time requisite to obtain a title
by prescription under the laws of the state, it will not
be sufficient to divest the right of an appropriator of
public waters. Mr. Long says, in section 83, "If the
appropriator has in fact abandoned his right, the length of
time for which he has ceased to use the water is wholly
immaterial, for the moment the abandonment itself is
complete, the rights of the appropriator are extinguished.
But in the case of mere nonuser, the rights of the appropri-

ator are not affected until he has failed to make any beneficial use of the water for the prescriptive period, when they become extinguished."

In California, the time fixed by law for the limitation of action to recover real property is five years, and by analogy the courts hold the same period is requisite to divest the title to water by nonuser, and this idea seems to prevail in other arid states. Nonuser must be continued for a time equal to the statutory limitations upon actions to recover the possession of real property, in order to lose the right of appropriation. The evidence in this case fails to show a nonuser of the appropriation for the term of ten years before this action was commenced. Hence, the Farmers Canal Company had not lost its appropriation by nonuser.

We hold, therefore, that Roberts Walker and the Farmers Canal Company were, at the time of the beginning of this proceeding, the owners of, and entitled to, an appropriation of water to the extent, and for the purpose, as allowed to them by the state board of irrigation in 1897.

In this connection it should be observed that these considerations do not apply to cases where an application for water has been granted by the state board, and the applicant has failed to complete the work within the specified time. Nor do we mean to say that an irrigation company may refuse or neglect, with impunity, to supply water to persons for whose lands it has been allowed to appropriate the same. The law grants to corporations of this character valuable rights, but with these rights are accompanying duties to the landholders for the irrigation of whose land the rights are granted, and if these obligations are not fulfilled, the law will interfere at the request of the party injured.

The irrigation company does not own the water; it is only the servant of the public to carry it to the land for which it has been appropriated, and this service it is bound to perform.

There remains the important question, whether or not the appropriation of the Farmers Canal Company and Roberts Walker should be held to be exclusive in its character, and whether the granting to the same makes it imperative upon the state board and upon the courts to refuse a subsequent application for an appropriation of the surplus waters from the same stream, for the purpose of irrigating the same land.

It is admitted by the agreed statement of facts that there is unappropriated water in the North Platte river sufficient to supply the application of the Farmers Irrigation District. Section 28 of the act of 1895, so far as it affects this question, is as follows: "If there is unappropriated water in the source of supply, named in the application, and if such appropriation is not otherwise detrimental to the public welfare, the state board, through its secretary, shall approve the same. * * * If there is no unappropriated water in the source of supply, or if a prior appropriation has been made to water the same land to be watered by the applicant, the state board, through its secretary, shall refuse such appropriation and the party making such application shall not prosecute such work so long as such refusal shall continue in force."

If the language of this section is to be construed literally, there is no doubt that the action of the court, dismissing the application of the Farmers Irrigation District, is correct. The contention of the Farmers Irrigation District with reference to this section is that it should be construed as though it read, "or if a prior appropriation has been perfected," and that, unless a prior appropriator has actually completed his appropriation by an application of the water diverted to the land sought to be irrigated, no "prior appropriation" in the language of the section has been made. They further urge that a literal construction of this provision would be in violation of section 15, article 3 of the constitution of the state of Nebraska, providing: "The legislature shall not pass local or special laws * * · * granting to any corpo-

ration, association, or individual any special or exclusive privileges, immunity, or franchise whatever." And further that it contravenes the provisions of section 16, article 1, providing that no law "making any irrevocable grant or special privileges or immunities, shall be passed."

The object of the law in question is the promotion of irrigation within the state of Nebraska by a just and fair apportionment of the waters of the state among its people in such manner as to utilize the waters to the fullest extent. To this end the state has in a manner seized upon these waters, and, as a matter of police regulation, for the public benefit has prescribed certain rules applicable to all persons alike regarding the methods of procuring the right to the water, the quantity to be applied to each acre, and the preservation of rights which have become vested. As in all other states and territories where irrigation is practiced, priority of appropriation gives priority of right, and no person or corporation is favored more than another. The law gives to every citizen of the state the right, upon complying with certain prerequisites, to appropriate for beneficial purposes the unappropriated public waters of the state, and it protects him in the enjoyment of this appropriation after his right is once vested. He takes this right, however, subject to the rights of all prior and subsequent appropriators, and he cannot infringe upon their rights and privileges. Section 20 of the act provides: "That such appropriator shall at no time be entitled to the use of more than he can beneficially use for the purposes for which the appropriation may have been made."

Section 42: "The water of every natural stream not heretofore appropriated, within the state of Nebraska, is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as hereinbefore provided."

Section 43: "The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied. Priority of appropriation shall give the better

right as between those using the water for the same purpose."

It is the evident purpose of the law, taken as a whole, to enforce and maintain a rigid economy in the use of the waters of the state. It has been, and is, the policy of the law in all the arid states and territories to require and enforce an economical use of the waters of the natural streams. The urgent necessities of the situation compel this policy by the very force of circumstances. One of the main objects of the system of administration of public waters prescribed throughout the arid regions is to restrain unnecessary waste, and to provide for an economic distribution of that element so necessary to the very existence of agriculture in those regions. This is also the policy of the state of Nebraska in its regulation of the use of the waters of the state, and the law should be construed so as to effect a reasonable, just and economic distribution of water for irrigation purposes. The court will take judicial notice of the fact that there are hundreds of acres within the state susceptible of irrigation to every acre which there is water enough to supply, and it is obvious that a construction of the law that will best distribute the use of the waters is to be preferred, if such construction is not inimical to any constitutional inhibitions or limitations.

The person making the first application for the use of water to water any particular tract of land is given by the law an exclusive right to the water, so long as he applies it to the beneficial use, and is granted, therefore, in a certain sense, a monopoly of the use of the water which he has been allowed to appropriate. But this monopoly or privilege, while exclusive in its nature, is not such a special privilege or immunity, a grant of which the constitution seeks to prevent. In the very nature of things, a grant of water for irrigation purposes which was not exclusive would be worthless. Unless his right to use water to a certain extent was sure and certain no person would be guilty of such folly as to attempt the pursuit of

agriculture in an arid region, when the supply of the only agency by which he might hope to raise a crop might be cut off by another claimant. The privilege granted by the operation of the act is not "special." On the contrary it is general in its operation, and applies to every citizen of the state who seeks to avail himself of the use of the public waters. It is obvious that, if an appropriation of a certain amount of water is allowed to an individual to water a certain tract of land, and out of the surplus waters in the stream a subsequent appropriation of water is made to the same extent to water the same land, there is thereby withdrawn from use by other persons who may desire to use it an amount of water equal to one of these appropriations, and that an area of land equal to that which the appropriations cover is deprived of the benefit of irrigation. Instead of the refusal to allow a subsequent appropriation of water to water the same land creating a monopoly, it would rather seem that to deprive another applicant of the use of water, by granting the right to use a double appropriation upon one piece of land, would tend to create a monopoly. It is objected that the exclusive right granted to a canal company to carry the water to the land to be benefited may be subject to abuse by extortionate charges, but the public have an interest in such a corporation, and the law may interpose if necessary for the protection of the individual. *Castle Rock Irrigation Canal & Water Power Co. v. Jurisch*, 67 Neb. 377. Further, the construction of works of the magnitude required to carry on extensive schemes of irrigation requires the expenditure of large sums of money, and it was no doubt the intention of the legislature to protect the men who put their money into such enterprises from the risk of loss by being unable to dispose of the water after it had been carried by them to the land upon which it was designed and appropriated to be used. The object of the law was to encourage, not to repress, irrigation enterprises. The right to prescribe the manner of using the waters of the state, and apportioning the use among the

people of the state, rests with the legislature, and is a proper exercise of its general police powers. The provisions preventing two appropriations of water for the purpose of watering the same land seem to be a just and fair exercise of this power, and rest upon sound policy.

It is unnecessary to consider further the validity of the provisions of the statute under consideration. The legislature having spoken, unless its language contravenes the constitution it is final. While it may be conceded that the legislature took a step farther than that of any other state or territory up to that time, in thus specifically declaring that an appropriation should be refused if a prior appropriation had been made to water the same land, yet we see in such provision nothing which is contrary to any constitutional provisions.

We recommend, therefore, that the decree of the district court be reversed and this cause remanded to the district court, with directions to enter judgment in favor of the Farmers Canal Company in accordance with this opinion, and with directions to remand the application of William Frank and Farmers Irrigation District to the state board of irrigation with leave to amend, if desired, and for further proceedings in accordance with this opinion.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and this cause remanded to said district court, with directions to enter judgment in favor of the Farmers Canal Company in accordance with this opinion, and with directions to remand the application of William Frank and Farmers Irrigation District to the state board of irrigation with leave to amend, if desired, and for further proceedings in accordance with this opinion.

REVERSED.