WHITE v. THE FARMERS' HIGHLINE CANAL AND RESERVOIR COMPANY.

| 22 | 191 |
|----|-----|
| 22 | 527 |
| 22 | 191 |
| 23 | 507 |
| 8a | 253 |
| 8a | 260 |
| 22 | 191 |
| 25 | 150 |
| 25 | 211 |

1. WATER RIGHTS—DITCH COMPANY TO CONTROL DISTRIBUTION.
A provision in a water right contract between a ditch company and a consumer, to the effect that if the company should at any time refuse to furnish the water, the consumer might take it himself, is void.

2. SAME.
The statute provides that the distribution of water for irrigation shall be under the control of the ditch company, acting through a superintendent, whose duties are prescribed.

3. POLICE POWER, EXTENT OF.
The police power of the state extends to the protection of the lives, health and property of the citizens, and to the preservation of good order and the public morals.

*Error to the Court of Appeals.*

THIS action was originally commenced by The Farmers' Highline Canal & Reservoir Company, as plaintiff, against

Torrence White. It appears from the undenied allegations of the complaint that the plaintiff is a corporation, organized and existing under the laws of the state of Colorado, for the purpose of owning, operating and maintaining an irrigating ditch, together with reservoirs, etc.; that said company was organized on the 3d day of December, 1885, and from and after its organization it has diverted a large amount of water from one of the public streams of the state, known as "Clear Creek." This water has been principally used by farmers for agriculture purposes, it being the custom of the Ditch Company to carry water for hire for the defendant and a large number of agriculturists along the line of the ditch.

It is alleged that the defendant is entitled to 45 inches of water, and no more. Notwithstanding such fact, it is averred that the defendant demanded 120 inches of water. The company, averring its inability to comply with this demand, refused to supply the defendant with the same, or any part thereof in excess of 45 inches. Thereupon the defendant enlarged the opening in the box through which the water in his ditch flowed to his land, and wrongfully took from the canal 75 inches of water for his individual use in excess of the 45 inches which he was entitled to. It is further alleged that the taking of this additional amount of water was at the expense and damage of many consumers of water from plaintiff's ditch.

It is also averred that the plaintiff company had in its employ an efficient and capable superintendent, whose duty it was to fix and adjust the various boxes through which water is supplied to the various lands receiving water from the said ditch; that this superintendent, in the discharge of his duties, apportioned the water strictly and properly according to the amounts to which each consumer was entitled. It is further alleged that, notwithstanding this fact, the defendant, after enlarging the capacity of the box or headgate used to supply his lateral ditch with water, continued to divert 120 inches of water.

It is further averred that numerous other persons, tempted

and led thereto by the evil example of the defendant, desiring to procure water for the irrigation of their lands in excess of the amount possible for the plaintiff to furnish, threatened to follow the example of the defendant, and at their will and pleasure take from said ditch various amounts of water, without consultation with the said superintendent, and against his opposition and remonstrance.

Plaintiff seeks for injunctive relief, restraining the defendant from taking from plaintiff's ditch water in excess of 45 cubic inches. Upon the filing of this complaint a temporary writ of injunction was issued in accordance with the prayer thereof. Afterwards the defendant filed his answer.

It is unnecessary to set forth this answer in detail. It suffices to say that by it the defendant claims the right to take the additional 75 inches of water from plaintiff's ditch by virtue of a contract made with plaintiff's grantors on the 22d day of March, 1873, and duly recorded. This contract is fully set out in the opinion of the court of appeals. See *Farmers' Highline Canal & Reservoir Co. v. White*, 5 Colo. App. 1.

The answer also avers that the full amount of 120 inches of water was necessary to properly irrigate the defendant's lands, described in the schedule annexed to this contract, and that previous to taking the same he had tendered to the plaintiff $120 in cash for this water, this being in full payment for 120 inches of water at the rate fixed in the contract. Upon the filing of this answer, the defendant filed a motion to dissolve the injunction, and about the same time also plaintiff filed a general demurrer to the answer. Whether or not the demurrer was filed before or after the dissolution of the injunction, as hereinafter set forth, does not definitely appear from the record. The record shows that after the coming in of the answer, the motion to dissolve was submitted upon the pleadings and evidence introduced by both parties. At this hearing, which was had before the district judge at chambers, in vacation, the injunction was dissolved. Some months thereafter, the cause coming on to be heard before

the district court in term time, the demurrer to the answer was overruled, and, the plaintiff electing to stand by the demurrer, the answer was taken as confessed and judgment entered for the defendant. From this judgment an appeal was taken to the court of appeals. A hearing in that court resulted in a reversal of the judgment of the district court, whereupon White sued out a writ of error, upon which the record was brought into this court.

Mr. A. H. DE FRANCE and Mr. A. J. RISING, for plaintiff in error.

Messrs. OSBORN & TAYLOR, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The order dissolving the temporary injunction being merely interlocutory is not before this court for review, except as the result was repeated in the final judgment; so, likewise, the evidence taken upon the hearing at chambers in vacation is not open to review upon appeal or writ of error. When the case was regularly reached in the district court for final hearing and determination, that court was at liberty to, and did, as the record discloses, proceed to final judgment unembarrassed by its previous order. At this hearing a general demurrer was overruled to the answer, the court thereby deciding that the pleading constituted a good and valid defense to plaintiff's complaint. In this state of the record the cause must be reviewed solely upon the pleadings.

The defendant having tendered the schedule price of $1.00 per acre for water for 120 acres of the lands embraced within the contract, and described in the schedule annexed thereto, insists as the water is necessary for the cultivation of his lands, that he is not only entitled to have that amount of water flow into his lateral, but that he has the right to take the same, without let or hindrance from the Ditch Company, its superintendent, or any other water consumer.

This right to actually divert water from the main canal in opposition to the will and against the protest of the plaintiff company and its superintendent is based upon the following provision of the written contract, set up in the defendant's answer:

"That, if the said ditch company, or the party of the second part, their assigns or successors, or whomsoever may be in control or management of the said ditch, as the case may be, shall at any time willfully or malignantly fail or refuse to comply with the terms of the indenture as to the furnishing of said water to said parties of the third part, or any or either of them, the party having right to demand and receive any part of said water for the uses aforesaid upon payment or tender of payment, at the proper time, and demand made in writing for such water, said tender or payment to be made to and said demand of the officer or agent, if any, appointed by the parties owning or managing said ditch, or, if there be no officer or agent appointed for the purpose of receiving such demand and payment, then such payment to be tendered to and demand made upon the president, secretary, treasurer or superintendent of said ditch company, or person exercising control and management of the said ditch, it shall be lawful for the party so entitled to such water to draw from and take all such water as he may be entitled to at the time of such tender or payment, subject to payment therefor on demand made by the officer or persons authorized to receive the same."

That part of this contract, which attempts to give each consumer the right to determine the amount of water to which he is entitled, with permission to take the same regardless of the rights of other consumers, or of the Ditch Company, was declared void by the court of appeals. The court bases its conclusion upon the following reasons:

*First.* "It is a right incompatible with the right of control incident to the ownership of the property."

*Second.* "It is against public policy as tending to confusion and a breach of the peace, 'in allowing parties to

take whatever water they required,' regardless of the rights of others having the same legal right."

The court being of the opinion that this provision of the contract was void, held that the lower court erred in refusing an injunction. Without reviewing the reasons given by the court of appeals, we think its judgment must be affirmed for a safer and better reason, viz. the exercise of the right claimed by plaintiff in error is inconsistent with the statute law of this state. In 1887 the legislature passed an act entitled " An Act Regulating the Distribution of Water, the Superintendence of Canals or Ditches Used for the Purposes of Irrigation, and Providing a Penalty for the Violation Thereof." Session Laws of 1887, page 304. The first section of this act provides at what time water shall be kept flowing in ditches. The second provides that the owners shall keep their ditches in good order and repair, and that a multiplicity of outlets shall at all times be avoided, so far as the same shall be reasonably practicable. The location of such outlets is placed under the control of the superintendent. The third section provides that it shall be the duty of those owning or controlling such canals or ditches to appoint a superintendent, whose duty it shall be to measure the water from such canal or ditch through the outlet to those entitled thereto, according to his or her *pro rata* share. Section four fixes a penalty in case the superintendent or other person having charge of the ditch shall willfully neglect or refuse to deliver water, etc., as by the act provided. Section five provides that the water commissioner, his deputy or assistant, shall promptly measure the water from the stream or other sources of supply into the irrigating canals, etc.

The right to the use of water in the arid region is among the most valuable property rights known to the law. Where there are a large number of consumers taking water from the same ditch, the excessive use by some may absolutely deprive others of water at times when its application to the thirsty soil is absolutely necessary to prevent the total failure of growing crops. So, also, as between different ditches,

if one in case of scarcity takes from a public stream water to which it is not entitled, it must be at the expense of others.

From the very nature of the business, controversies with reference to the use of water naturally led to unseeming breaches of the peace, and to avoid these it was found expedient and necessary to provide complete rules of procedure governing the taking of water from the public streams of the state, and regulating its distribution to those entitled thereto. Authority for such regulations may properly be based upon the principle that when private property is "affected by a public interest it ceases to be *juris privati* only."

That a canal used for the carriage of water for hire in this state is affected by a public interest has been recognized by the repeated decisions of this court. Says Mr. Justice Helm, in the case of *Wheeler v. The Northern Colo. Irrigation Co.*, 10 Colo. 582:

" Under the constitution, as I understand it, the carrier is at least a *quasi*-public servant or agent. It is not the attitude of a private individual contracting for the sale or use of his private property. It exists largely for the benefit of .others; being engaged in the business of transporting, for hire, water owned by the public, to the people owning the right to its use. It is permitted to acquire certain rights as against those subsequently diverting water from the same natural stream. It may exercise the power of eminent domain. Its business is affirmatively sanctioned, and its profits or emoluments are fairly guarantied. But in consideration of this express recognition, together with the privileges and protection thus given, it is, for the public good, charged with certain duties and subject to a reasonable control."

Although it is difficult to define the boundaries of the police power of the state, such regulations as those prescribed by the statute under consideration are by the decisions of the highest courts declared to be within such power.

In the *Sinking-Fund Cases*, 99 U. S. 700, Mr. Justice

Bradley, referring to the *Granger Case*, reported in 94 U. S. 113, stated the principle as follows:

" The inquiry there was as to the extent of the police power in cases where the public interest is affected; and we held that when an employment or business becomes a matter of such public interest and importance as to create a common charge or burden upon the citizen; in other words, when it becomes a practical monopoly, to which the citizen is compelled to resort, and by means of which a tribute can be exacted from the community, it is subject to regulation by the legislative power."

In the case of the *Beer Company v. Massachusetts*, 97 U. S. 25, it is said: " Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals."

It is said, however, that as the contract under which the defendant claims in this case was executed prior to the passage of the act of 1887, the parties to this action are not bound by that statute; the argument of the plaintiff in error in this particular being that he has a contract right to take this water as he pleases, and that this is a property right with which the legislature cannot interfere. This argument has been advanced in many cases, but, we believe, never successfully where, as here, it is in opposition to the police power of the state.

The extent to which the police power of the state may go is well illustrated by the case of the *Fertilizing Company v. Hyde Park*, 97 U. S. 659. In that case, by the act approved March 8, 1867, the legislature incorporated the Northwestern Fertilizing Company, to have continued succession and existence for the term of fifty years. By the act of incorporation, the company was authorized and empowered to establish and maintain in Cook county, Illinois, "at any point south of the dividing line between townships 37 and 38, chemical and

other works, for the purpose of manufacturing and converting dead animals and other animal matter into an agricultural fertilizer, and into other chemical products, by means of chemical, mechanical, and other processes."

The company was also authorized to establish and maintain depots in the city of Chicago, for the purpose of receiving and carrying off from and out of the said city any and all offal, dead animals, and other animal matter which it might buy or own, or which might be delivered to them by the city authorities and other persons. The works of the company were located within a designated territory, at a place then swampy and nearly uninhabited, but, at the time of the suit, forming a part of the village of Hyde Park. In March, 1869, the legislature passed an act revising the charter of the village of Hyde Park and granting to it the largest powers of police and local government.

In 1872 the village authorities passed the following ordinance: "No person shall transport, carry or haul any dead animals or other offensive or unwholesome matter or material into or through the village of Hyde Park," fixing a penalty for the violation of this ordinance.

After this time the village authorities caused the arrest of the engineer and other employes of a railway company who were engaged in carrying offal through the village to the chemical works. These men were tried and convicted for violating the ordinance and fined $50.00 each, whereupon the company filed its bill in the United States court to restrain further prosecutions and for general relief. When this case reached the supreme court of the United States, that court, in affirming the judgment of the state courts, held, among other things, that the charter was a sufficient license until revoked; but not a contract guaranteeing that the company should for 50 years be exempt from the police power of the state, notwithstanding its business might become a nuisance by reason of the growth of population around the place selected for its works; third, that the charter afforded the company no protection from the enforcement of the ordinance.

The case of the *Buffalo East Side R. R. Co. v. The Buffalo Street R. R. Co.*, 111 N. Y. 132, is directly in point upon this branch of the discussion. The contest in that case grew out of a contract between two street railway corporations operating in the city of Buffalo. The contract provided, among other things, for the making of connections by each with the roads of the other "so long as it receives for the transportation of passengers the fare allowed on the 3rd of May, 1872, and no longer;" each agreeing that it would charge the same rate that it was "permitted to charge by the statute in force, regulating the same on that day," and would make no changes in rates without the consent of the other party. After this contract was made, a statute was enacted making it unlawful for any street railway company in Buffalo to charge more than five cents for each passenger, this being a sum less than that authorized by the statutes in force May 3, 1872.

In obedience to this statute the defendant reduced its rates of fare to five cents, plaintiff claiming that such reduction was in violation of the contract. Upon these facts the court held that "the authority of the legislature in the exercise of its police powers cannot be limited or controlled by the action of a previous legislature or by the provisions of contracts between individuals or corporations."

As the charter under consideration in the case of the *Fertilizing Co. v. Hyde Park, supra,* did not exempt the corporation from the police power of the state, although the exercise of that power in the manner attempted necessarily compelled the removal of its works to another location, and as neither the charter nor the contract between the rival street car companies in the case of the *East Side R. R. Co. v. Buffalo Street R. R. Co., supra,* prevented the reduction of fares by the legislature, so our act of 1887, governing the distribution of water by ditch companies carrying water for hire, is binding upon the parties to this action, notwithstanding the agreement of March 22, 1873.

The authority of the legislature in the premises is now so

well settled that we may well rest content with the citations of a few of the many cases in which it has been upheld. *Granger Cases, supra; Beer Co. v. Commonwealth, supra; Sinking-Fund Cases, supra; Fertilizing Co. v. Hyde Park, supra; East Side R. R. Co. v. Buffalo Street R. R. Co., supra; Bertholf v. O'Reilly,* 74 N. Y. 509; *People v. Budd,* 117 N. Y. 1; *Richardson v. City of Boston,* 24 How. 188; *Tucker v. Ferguson et al.,* 22 Wall. 527; *West Wis. Ry. Co. v. Board of Supervisors,* 93 U. S. 595.

The statute does not affect the right of plaintiff in error to receive whatever water he may justly be entitled to under his contract, but where, as here, there is a controversy as to the amount of such water available for his use, he must bring his action to determine such right, and in no event can he be allowed to ignore the company's superintendent and its reasonable regulations, and in violation of the statute enlarge the outlet to his lateral ditch and take water from the company's ditch at will.

For the reasons given, the district court erred in overruling the demurrer to the defendant's answer, and in refusing to reinstate the injunction upon the final hearing, and the judgment of the court of appeals is accordingly affirmed.

*Affirmed.*