SPANISH FORK WEST FIELD IRR. CO. et al. v.
DISTRICT COURT OF SALT LAKE
COUNTY et al.

No. 6164.   Decided July 10, 1940.   (104 P. 2d 353.)

For opinion on rehearing see 99 Utah 558, 110 Pac. 2d. 344.

*Elias Hansen,* of Salt Lake City, for plaintiffs.

*Van Cott, Riter & Farnsworth* and *Ingebretsen, Ray, Rawlins & Christensen,* all of Salt Lake City, for defendants.

TRUEMAN, District Judge.

This original suit, for writ of prohibition, brought to determine the construction of Sec. 100-4-3, R. S. U. 1933, as amended by Chapter 112, Laws of Utah, 1939, raises two principal questions:

(1) Whether the District Court of Salt Lake County, Utah, has jurisdiction in an action in equity to adjudicate a general determination of all of the water rights in the drainage area of the Utah Lake and Jordan River.

(2) Whether Chapter 112, Laws of Utah, 1939, amending Section 100-4-3, R. S. U. 1933, created a "new, restrospective, remedy."

The statute designated as Sec. 100-4-3, R. S. U. 1933, was taken by the Code Commission from Sec. 22 of Chap. 67, Laws of Utah 1919, and brought forward in the 1933 compilation in an edited and revised form.

None of the language used in the edited statute had any tendency to modify or change the legislative intent of the original statute except with respect to the duties of the State Engineer.

From an examination of the original 1919 statute it is plain that upon the filing of any action or suit in the district court for the determination of water rights the clerk of the said court shall notify the state engineer who shall as expeditiously as possible perform the duties and exercise the discretions imposed upon that office by law. The duties imposed upon the state engineer and defined in Sec. 22 of Chap. 67, Laws of Utah 1919, are mandatory. The code commissioners in compiling the 1933 Revised Statutes edited and modified the said statutes so as to indicate the state engineer should perform his duties only "* * * if so ordered by the court * * *."

This language appears in the fifth line of Sec. 100-4-3, R. S. U. 1933.

This was the state of the law on May 28, 1936, when the defendants Salt Lake City, a municipal corporation, et al., filed a suit in equity in the District Court of Salt Lake County, Utah, against more than two thousand defendants, among whom were included the plaintiffs in this action, for the purpose of securing a general adjudication of the water rights of all claimants to the use of water which, if not interfered with, flows into Utah Lake, and the said

action seeks also to secure an adjudication of the rights of the various claimants to the use of the water in the Jordan River.

The act of 1939 amended Sec. 100-4-3, R. S. U. 1933, in several particulars not in controversy in this case.

One amendment deleted the phrase "if so ordered by the court," and restored the statute to its use and purpose intended by the 1919 legislature.

Another amendment added the following provisions at the end of the amendatory statute:

"* * * And the court shall proceed to determine the water rights involved in the manner provided by this chapter and not otherwise. * * *"

This language added nothing to the 1919 statute but was indicative of the legislative intent both in 1919 and in 1939. The intent of the 1939 legislature was present in the 1919 statute without the use of this language.

So we start with this hypothesis that it was the intention of both the 1919 and 1939 legislatures to require the state engineer to perform the statutory duties imposed upon him and exercise the discretions with which his office is invested by law.

Sec. 100-4-3, R. S. U. 1933, was amended by Chap. 112, Laws of Utah 1939, in the following particulars:

After the word "shall" in the fifth line of the said statute as set forth in the 1933 R. S. U., as Sec. 100-4-3, delete the words: "if so ordered by the court," and, after the word "ditches," in the twenty-sixth line of the said statute, add the words: "canals, wells, tunnels or other works," and, after the word "filed" in the thirty-fourth line of the said statute, add the words: "prior to the enactment hereof," and, after the last line add the following provision: "and the court shall proceed to determine the water rights involved in the manner provided by this chapter and not otherwise."

So that the 1939 amendatory act is identical with the amended statute except for the one deletion "if so ordered by the court," and the additions as stated above.

The 1939 amendatory statute is given in full below. The italicized words are the additions covered by the 1939 amendment. The term "if so ordered by the court" was deleted by the 1939 amendment.

"100-4-3. Determination by Action—Notice to Claimants—Duties of Engineer. Upon the filing of any action for the determination of water rights the clerk of the district court shall notify the state engineer that such has been filed. Whereupon the state engineer shall, as expeditiously as possible prepare and file with the court a statement giving the names and addresses of all the claimants to the use of water from the river system or water source involved in such action, so far as the said claimants are known; and to this end the clerk of the court shall publish, once a week for two consecutive weeks in a newspaper designated by the court as most likely to give notice to such claimants, a notice setting forth that such an action has been filed, naming or describing the river system or water source involved and requiring claimants to the use of water therefrom to notify the state engineer of their names and addresses for the purposes hereinafter set forth. When such statement shall have been filed or when the clerk of the court shall have ascertained as nearly as may be the names of all claimants, he shall within fifteen days prepare a notice setting forth the date when the state engineer will begin the survey of the system or water source and the ditches, *canals, wells, tunnels or other works* diverting water therefrom, or the fact that such survey has already been completed, as the case may be, and shall give notice that such claimants must within sixty days after the service of such notice file a written statement with the clerk of the court, setting forth their respective claims to the use of such water. Where such a suit shall have been filed *prior to the enactment hereof*, it shall be the duty of the state engineer upon receiving notice thereof to examine the records of his office with respect to the water system or water source involved, and if they are incomplete, to make such field investigations and surveys as may be necessary for the preparation of the report required by section 100-4-11, *and the court shall proceed to determine the water rights involved in the manner provided by this chapter and not otherwise.*"

In order to clarify the matters as much as possible we quote below Sec. 22 of Chap. 67, Laws of Utah 1919:

"Statement as to water users—publication of notice—date as to survey—claims—field investigations. Upon the filing of any suit for the determination of water rights, the clerk of the district court shall notify the State Engineer that such suit has been filed. Whereupon the State Engineer shall, as expeditiously as possible, prepare and file with the court a statement giving the names and addresses of off the claimants to the use of water from the river system or water source involved in such action, so far as the said claimants are known; and to this end the clerk of said court shall publish, once a week for two consecutive weeks in a newspaper designated by said clerk as most likely to give notice to such claimants, a notice setting forth that such a petition has been filed, naming or describing the river system or water source involved and requiring claimants to the use of water therefrom to notify the State Engineer of their names and addresses for the purposes hereinafter set forth. When such statement shall have been filed or when the clerk of said court shall have ascertained as nearly as may be the names of all claimants, said clerk shall within fifteen days prepare a notice setting forth the date when the State Engineer will begin the survey of the system or water source and the ditches diverting water therefrom, or the fact that such survey has already been completed, as the case may be, and also giving notice that such claimants must within sixty days of the service of such notice file a written statement with the clerk of said court, setting forth their respective claims to the use of such water. Where such a suit shall have been filed, it shall be the duty of the State Engineer upon receiving notice thereof to examine the records of his office with respect to the water system or water source involved, and if they are incomplete, to make such field investigations as may be necessary for the preparation of the report required by Section 28 hereof."

After the action was commenced in the District Court of Salt Lake County, Utah, numerous demurrers, both general and special, and motions for change of venue, and motions to make more certain, were filed and disposed of in said cause by the court below.

None of the defendants in the said action have answered, and no evidence has been received, and the rights of the parties to the said action have not been heard and determined.

On June 16, 1936, the District Court of Salt Lake County, Utah, made an order directing the defendants in said cause

to appear before it on December 7, 1936, and show cause as follows, namely:

"1. Why this court should not forwith assume jurisdiction and control over the waters of Utah Lake and its tributaries and to appoint one or more persons for the purpose of supervising the diversion and distribution of said waters and carrying out such orders and directions as may be issued by the court pending a final determination;

"2. Why a restraining order should not be issued enjoining defendants and each of them from engaging in the practices of winter flooding land;

"3. Why water impounded by any defendant should not be held and diverted during the irrigation season in such manner as the court may later order; and

"4. Why an order should not be forthwith made and entered herein, fixing a day certain at specified intervals when the court shall hear and determine any matters affecting the supervision, control, distribution or diversion of the waters of Utah Lake and its tributaries or any of them pending final decree and make such interlocutory orders as may be necessary and proper, without the necessity of serving notice of such hearings or any of them upon any of the parties to this suit."

The District Court of Salt Lake County, Utah, continued its said order to show cause, from time to time and until June 7, 1939, when said defendant District Court made and entered an order setting the said order to show cause for hearing on Thursday, September 14, 1939.

That action gave immediate rise to these proceedings, so that on June 17, 1939, the plaintiffs filed in this court a petition for a writ of prohibition.

On July 22, 1939, the defendants herein filed in this court an answer and return to the alternative writ of prohibition.

The parties also filed a stipulation in this court to the effect that $71,718.87 had been expended by the defendants as costs in and about the prosecution of the action in the District Court.

The deposition of Mr. T. H. Humphreys, State Engineer, was taken on August 19, 1939, under the stipulation of

counsel appearing in this proceeding and is entitled in the Supreme Court of Utah.

This action in the District Court is grounded on a theory that because of the impotency of the State Engineer to perform his duties and exercise his discretion, defendants are denied a remedy, and that a court of equity will take cognizance thereof and grant relief.

So that our original jurisdiction has been invoked to hear the cause and grant relief.

Our opinion will develop the questions, whether the statutory action was an exclusive remedy or a cumulative remedy, or whether defendants have been injured within the terms, purport, intent and meaning of either of the following provisions of the Constitution of Utah.

Section 7, Article 1: "No person shall be deprived of life, liberty or property, without due process of law."

Section 11, Article 1: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

Section 1, Article 5: "The powers of government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Section 26, Article 6: " The Legislature is prohibited from enacting any private or special laws in the following cases:   *   *   *."

Sub-section 6: "Regulating the practice of courts of justice."

Section 1, Article 8: "The Judicial power of the State shall be vested in the Senate sitting as a court of impeachment, in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law."

Section 7, Article 8: "The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law   *   *   *. The District Courts or any judge thereof, shall have power to issue writs of habeas corpus,

mandamus, injunction, quo warranto, certiorari, prohibition, and other writs necessary to carry into effect their orders, judgments and decrees," etc.

In order that this opinion may reflect the proper perspective, a brief review of the history of the Statutes under consideration should be stated.

The doctrine of riparian rights was entirely unsuited to the conditions found in the arid portions of the country. It tended to retard the development of vast regions in the western states.

The method of posting, and recording a notice of appropriation, followed by the diversion and application of water to a beneficial use led to strife, contention, litigation and sometimes to violence. *Farmers' Irrigation District* v. *Frank,* 72 Neb. 136, 100 N. W. 286.

This was the method in effect in Utah until the legislature provided by legislative enactment for the appointment of a State Engineer, and a different method of acquiring the right to the use of the public waters of the State of Utah.

It was found that conflicting claims to the right to the diversion and use of these public waters gave rise to constant, harrassing and expensive litigation, in a multiplicity of law suits.

The office of State Engineer was created and parties desiring to acquire rights to the use of any of the public waters of the State of Utah were required to make their applications to the State Engineer, but this method proved to be only a partial remedy for the existing evils.

And to provide a further remedy, the legislature enacted in 1909 an act providing for hydrographic surveys, chapter 98, so that a survey could be made of each stream and source of water in the State for the determination of all water rights. This act was amended in succeeding sessions of the legislature and hydrographic surveys were made, but costly litigation continued between individuals claiming the right to divert and use water.

Chapter 67, Laws of Utah 1919, was enacted because of the ever increasing litigations between individuals over the right to the use of the public waters of the State, and to remedy this condition and to avoid a multiplicity of suits, and to provide for an orderly, peaceful and equitable distribution of the public waters of the State, in accordance with acquired priorities.

Chapter 67, Laws of Utah 1919, repealed all existing laws on the subject. This was a general act in which provision was made for the State Engineer to maks surveys and an investigation of the rights of claimants to use the water, and after a full consideration of statements of claimants, and a personal examination of the river system and water source, to make a proposed determination of *all* rights to the use of water from such system or water source.

Where different rights are connected with the same stream, one cannot be successfully regulated without including in such regulation all such rights, and when private property is affected by a public interest it ceases to be juris privati and becomes juris publici, and where the law declares the ownership of all waters of all streams and other sources in this State, whether flowing above or under ground in known or defined channels is the property of the public and subject to all existing rights to the use thereof, the State then becomes a necessary party under the provisions of Section 38, Chap. 67, Laws of Utah 1919, now Sec. 100-4-18, R. S. U. 1933 to any action for a general adjudication of the water rights in any drainage area, whether before or since the enactment of the 1939 Statute, and the State Engineer is required to perform his duties.

From this premise, it follows that the State has the right to control the diversion and distribution of the public waters in this State.

The Legislature had undoubted authority to vest the control of the diversion and distribution of the public waters of this State, in the State Engineer, subject to review by

the courts, and subject to the provision of Sec. 1 of Art. 17 of the Constitution of Utah, providing that:

"* * * All existing rights to the use of any of the waters in this State for any useful or beneficial purpose, are hereby recognized and confirmed. * * *"

No one can obtain any title to any unappropriated water so long as it remains in the stream or the source of origin. It is only after water has been diverted into private canals or ditches, by permission of the State of Utah, that the party making the diversion thereof acquires a qualified ownership in water.

And, when unappropriated water has been so appropriated in accordance with law, by permission of the State of Utah, and put to beneficial use, the right thus acquired carries with it the interest in the stream or other source of origin from the point where waters are diverted from the natural channel or subterranean source.

The laws of Utah are similar to those of Wyoming, Nebraska, Colorado and Oregon insofar as the power of the State Engineer is concerned.

In Wyoming this authority is vested in a board of control. In Nebraska this authority is vested in the State Board of Irrigation and in Colorado and Oregon in similar boards.

And the laws of these states, vesting such boards with quasi judicial powers similar to the powers given to the State Engineer in this State, have been upheld. *Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 61 P. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; *White* v. *Farmers' High Line Canal & Reservoir Co.,* 22 Colo. 191, 43 P. 1028, 31 L. R. A. 828; *Pacific Livestock Co.* v. *Oregon Water Board,* 241 U. S. 440, 451, 36 S. Ct. 637, 60 L. Ed. 1084; *Farmers' Irr. Dist.* v. *Frank,* 72 Neb. 136, 100 N. W. 286. The doctrine of these cases has been approved and followed by our court. *Eden Irrigation Co.* v. *District Court,* 61 Utah 103, 211 P. 957.

Obviously then Chap. 67, Laws of Utah 1919 was enacted for the purpose of providing a statutory remendy whereby

all parties claiming the right to use waters from any given source could be brought before the court so that all conflicting claims could be adjudicated in one action, and to provide for the proposed determination of such rights by the State Engineer, and the distribution of the water according to such determination pending the trial in the court.

The solution of the questions in issue in this case appears to be quite simple, and it follows necessarily from the syllogism that if it be true defendants have no standing in the courts of this state to pursue an equitable action where a statutory action is provided then it follows as of couse that Chap. 112, Laws of Utah 1939 has not operated to deprive defendants of due process of law, nor denied them any claimed constitutional right in which they have a vested interest, even though the 1939 statute makes it mandatory upon the court to require the State Engineer to perform those duties which under the 1933 Statutes were discretionary, but, which are under the 1939 Statute mandatory, and the basis for the claimed "new remedy."

The retrospective feature of the so-called "New Remedy" under the 1939 Statute will be considered further on in this opinion.

Many, if not most, of the cases cited by defense counsel show facts and circumstances, and support practice, procedure and theories readily differentiated from the controlling legal principles applicable in this case. It is not necessary to a determination of this case to attempt to analyze them in this opinion; in fact is cannot be done, the views expressed are too divergent, but it is apparent the matters can all become harmonized through a restatement of the fundamental application of the equitable jurisdiction of the District Court in Utah, which must be stated.

To view the matter in logical sequence we will first analyze the basic principles of our equitable jurisdiction applicable under the Code of Civil Procedure now in force in Utah, and consider the legal effect of the procedure provided by Sec. 100-4-3, R. S. U. 1933, as stated above, both

prior and subsequent to the codification of the Statute in the 1933 R. S. U., together with the benefits intended to be obtained under these Statutes, the historical development of which statutes we have stated.

Defendants argue in their brief on page 10, as follows, namely:

"It is one thing to say that a legislature may create a *new right* or a *new remedy* and quite another to say that a legislature may destroy or impair a *vested right* in the creation of which it had and could have had no part, or may deprive courts of jurisdiction expressly vested in them by the supreme law, or may control or instruct the courts as to what they shall or shall not do in order to protect and enforce vested rights of litigants, or may abate suits properly commenced and actually pending in courts of competent jurisdiction when the legislative action occurs, or may deny or postpone the exercise by any person of his right to prosecute in any court of competent jurisdiction a suit for an unlawful interference with his property. * * *" (Italics added.)

Defendants are confusing the distinction between "new rights" and "new remedies" as we will point out.

Defendants then argue, on pages 36 and 37 of their brief, in justification of their so-called equitable action, as follows:

"Surely no one will seriously contend that state legislatures have authority to destroy the right of citizens to seek injunctive relief in the courts of Utah or can take from those courts their ancient power to make and enforce such orders as they deem essential to the protection of the rights of the parties and the administration of justice. To uphold such authority would completely eliminate the judicial department of our government and due process of law would disappear."

So that the defendant's claim may be summarized as follows:

(1)   To deny them the right to proceed in equity is to deprive them of a "vested right" in violation of constitutional provisions.

(2)   To deny them of an injunction is to deprive them of a constitutional right; deny them due process of law.

(3) To hold that Chap. 112, Laws of Utah 1939, which created a new remedy, which if applied to this case will amount to a special law, depriving the court of its constitutional right to issue an injunction, and regulates the practice of Courts of Justice, and impose the administrative department of the State upon the Judiciary, and defeat constitutional government by depriving defendants of vested rights.

And we will consider the issue presented in view of all of these claims.

Equity was formerly administered in England by the High Court of Chancery, by virtue of its extraordinary jurisdiction, but is now a separate, but incomplete system of jurisprudence administered side by side with legal or statutory actions, but supplementing the latter where there is a deficiency, and in places overlapping and in such circumstances usually prevailing as against the law.

It has its own fixed precedents and principles, now scarcely more elastic than those of the law. The American jurisdictions may be grouped with respect to their systems of equity administration with practical accuracy into three classes:

First: Where equity is administered by courts distinct from those administering the law.

Second: Where equity and law cases are administered in the same courts, but the procedure is kept distinct and in general are the same as the first class.

Third: Where codes or practice acts abolish the distinction in procedure.

Utah is now in the third class, but was in the second class until the 1870 Code was adopted. *See Houtz* v. *Gisborn,* 1 Utah 173; also the case of *Folsom* v. *McLaughlin,* 1 Utah 178.

We are not concerned with the question of the sufficiency of the pleadings to state an equitable action under pro-

cedure applicable to jurisdictions in the first and second group.

But the codes do not purport to effect substantial rights or to abolish the essential distinctions between legal and equitable rights and relief, but merely to assimilate the processes by which said rights are asserted and such relief obtained.

Such statutes, however, make no change in the law which determines what facts constitute a cause of action. They merely provide the mode in which redress may be had when a right has been invaded.

And it may be generally said that equity has jurisdiction in cases of rights recognized and protected by law, where an adequate remedy can not be had in the courts. The rule is generally stated in the negative form that equity will not entertain jurisdiction in specified instances.

But the rule, simple enough in terms, is sometimes quite difficult in application. It is immaterial whether the complaint in the District Court alleges an adequate basis for relief according to accepted doctrines of the equity system of jurisprudence in those states whose pleading and practice differ from that in force in Utah.

Article 8, Sec. 19, Constitution of Utah is as follows:

"There shall be but one form of civil action, and law and equity may be administered in the same action.  *   *   *"

That provision of the Constitution simply means this, namely: Under our system when the jurisdiction of the district court has been invoked by the filing of a civil action the court will grant relief whether the facts alleged and found afford an adequate basis for relief according to accepted doctrines of the common law or the equitable system of jurisprudence, which are guides to decisions of cases within the original jurisdiction of our district courts.

The mode of procedure up to the trial or hearing are the same whether a legal or equitable remedy is sought.

The plaintiff, whatever the relief he may ask, is required to state "in ordinary and concise language" the facts of his case upon which he invokes the judgment of the courts. See: Sec. 104-7-2, R. S. U. 1933.

But the consideration which the court will give the questions raised by the pleadings, when the case is called for trial or hearing, must depend upon the jurisdiction which is to be exercised.

Sometimes in the same action both legal and equitable relief may be sought, as for example, where damages are claimed for past diversion of water, and an injunction prayed against the diversion in the future. And here you have the distinction in this case from the case of *Smith* v. *District Court,* 69 Utah, 493, 256 P. 539, relied upon by counsel for the defendants.

The formal distinctions in the pleadings and mode of procedure are abolished, but the essential distinction between law and equity is not changed.

The relief which the law affords must still be administered through the accepted doctrines of the common law; and the relief which equity affords must still be applied by the court itself from the precedents and principles of the equitable system of jurisprudence.

Generally speaking, courts of equity exercise a broad and flexible jurisdiction to grant remedial relief where justice and good conscience requires it. A court of equity, however, cannot create rights, but is limited to determine what rights the parties have and whether or in what manner it is just and proper to enforce them. These courts, of course, equally with courts of law are bound by positive provisions of the statutes and they cannot, any more than courts of law, disregard constitutional and statutory requirements.

Inadequacy of a legal remedy is undoubtedly a ground for equitable jurisdiction. *Thompson* v. *Smith,* 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604.

And equity provides remedies for legal rights where the court of law affords none. *Brent* v. *Bank of Washington,*

10 Pet., U. S., 596, 9 L. Ed. 547. See, also, Annotation, 1 L. R. A. 801.

Sec. 100-4-3, R. S. U. 1933, and its antecedent statute, namely Sec. 22 of Chap. 67, Laws of Utah 1919, provided a statutory action for the determination of water rights in the State of Utah.

The Constitution of this State gives the power to the courts to issue writs of injunction in our civil form of action and the legislature cannot take it away. And as far as we know the legislature has not contemplated such. However, there may be instances where an injunction is provided by statute as a part of a statutory remedy.

There is a distinction between an injunction as part of a remedy and an injunction exercised by courts under constitutional power. And a statute may deny a remedy by injunction in certain specific cases. See the annotation following the case of *Casco Co.* v. *Thurston County,* 163 Wash. 666, 2 P. 2d 677, 77 A. L. R. 622. Also consider *George B. Wallace Co.* v. *International Ass'n of Mechanics,* 155 Or. 652, 63 P. 2d 1090.

If an injunction is provided as part of a statutory remedy, litigants may under some circumstances acquire a vested right in such injunction. That question is not presented here and we reserve our opinion thereon until such time as we have occasion to consider it.

The district courts in Utah have constitutional power to issue an injunction in our one civil form of action, but that prerogative is incidental and discretionary. Litigants have no vested right in the discretion of the court. Litigants in jurisdictions maintaining separate chancery courts for separate equitable practice and procedure have no such vested rights.

And while our district courts may and frequently do give incidental relief by injunction to secure the full benefits of the adjudication, and to terminate the litigation in the same suit, they are not bound to do so, and their adjudication

of the conflicting claims are not any the less effective as res adjudicata because not supplemented by injunction.

Both the 1919 and 1933 statutes have a provision for a "reference" to the State Engineer, who, under expressed statutory provisions shall perform certain designated duties. These duties under the 1919 Statute are mandatory, but under the 1933 Statute are to be performed "if so ordered by the Court".

The duties of the State Engineer under either the 1919 or the 1933 laws, whether mandatorily required by statute, or by an order of a court made by virtue of a statute, to make the determinations and perform the duties provided by Sec. 100-4-3, R. S. U. 1933, are procedural and although the State Engineer acts in a quasi judicial capacity in performing part of his duties, his determinations are not binding on the court, and are only advisory as far as the court is concerned. No person has a vested right in the mode of procedure of a court.

Under the provisions of Chap. 112, Laws of Utah 1939, the information presented to the court by the State Engineer is only an aid to guide its action, the same as a report of a master in chancery, a special master or a referee in an equitable action, which is procedure well grounded in precedent in equitable jurisprudence.

From a practical point of view when the State Engineer performs his duties and makes a determination and recommendation to the court, the court is informed of the administrative determination of the water right by those whose duty it is to devote their time and energies to the application, determination and distribution of the public waters of the State, which is a very salient consideration where it becomes necessary to correlate the determinations of that office with the rights and interests of the State as well as the two thousand defendants in this case.

To deny the State Engineer the right to function as provided by law is to tear down and destroy a constructive program inaugerated to concerve and equitably administer

a natural resource of the state, not only for the benefit of these defendants, but for all others similarly situated and for posterity.

That the plenary power of the legislature to provide such procedure in any circumstance is well within its prerogative, but more especially where the procedure has first, as one of its objects, the orderly distribution of all water which is a resource of the state, and second, the protection of all unappropriated water, the title to which is in the public, and the greatest right an appropriator can have in it is a right to its use when it is employed to beneficial use and kept so employed.

Defendants have no vested right in the procedure provided by the legislature to assist the court in discharging its duties, and the functions of the State Engineer is no more regulatory of the practice of the court of justice than any other assistance provided for the court by the legislative branch of the state for the convenience of the court, such as its attaches.

Counsel for defendants is confusing the distinction between a "vested" right in procedure from a "vested" right of action.

A vested right in procedure of a court is quite different from a vested right of action. With reference to a right of action it is stated in 6 R. C. L. under title "Constitutional Law," p. 316, par. 304, as follows:

"A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference, and whether it springs from contract or the principles of the common law, it is not competent for the legislature to take it away."

And this court has approved and affirmed this doctrine in the case of *Halling* v. *Industrial Commission of Utah* et al., 71 Utah 112, 263 P. 78, citing 2nd Cooley's Cons. L., 8th Ed., p. 756, and cases cited in the footnote.

But Art. 1, Sec. 9, of the Constitution of the United States does not in terms prohibit the enactment by the state of retrospective laws.

Every ex post facto law must necessarily be retrospective, but every retrospective law is not necessarily an ex post facto law; and so retrospective laws in so far as they are ex post facto laws are prohibited. In some states there are constitutional provisions expressly inhibiting not only the passage of any ex post facto law, or law impairing the obligation of contracts, but any statute retrospective in its operation; while in other states, like Utah, there are no provisions in their constitutions directly forbidding the enactment of retrospective laws; and Art. 1, Sec. 10 of the Constitution of the United States does not prohibit a state from passing such laws.

The Constitution of Utah provides in Art. 1, Sec. 18, as follows:

"No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be passed."

And our construction on that provision of our Constitution has been upheld by this court.

Mr. Justice Miner states in the case of *Mercur Gold M. & M. Co.* v. *Spry*, 16 Utah 222, 52 P. 382, 384, citing Cooley, Const. Law, p. 73, Suth. St. Const. §§ 463-465:

"* * * Constitutions, as well as statutes, should operate prospectively only, unless the words employed show a clear intention that they should have a retrospective effect. * * *"

And even though the duties of the State Engineer under Sec. 100-4-3, R. S. U. 1933, provided that that official shall perform the duties imposed by law, upon the order of the court, the defendants by filing a so-called equity suit cannot circumvent that prerogative of the court. And as we have pointed out there is no difference in procedure under our system of practice between a legal and equitable remedy up to the trial or hearing, and although at the time this

action was filed under the law the court may have exercised a discretion as to whether it would call upon the State Engineer to perform the duties imposed upon him by law, that matter is no longer discretionary, and after Chap. 112, Laws of Utah 1939, became a law, it thereupon became the duty of the court to proceed with the procedure provided by law.

Not only did the 1919 legislature intend that the statutory action provided in Chap. 67, Laws of Utah 1919, should be the exclusive remedy for a general determination of the water rights of any stream or other source, but it was the exclusive remedy under Sec. 100-4-3, R. S. U. 1933, when this action was filed.

Chap. 112, Laws of Utah 1939, which is the amendatory act, provides:

"* * * and the court shall proceed to determine the water rights involved in the manner provided by this chapter and not otherwise. * * *"

But this language did not in any manner limit, abridge or modify the remedy, that is the right of action, provided by Sec. 100-4-3, R. S. U. 1933, which was in force at the time this action was filed.

When a valid statute confers a power or imposes a duty upon a designated official, a failure to exercise the power or to perform the duty does not affect the existence of the power or duty or curtail the right to require performance in a proper case. See *Chicago, Burlington & Quincy R. R. Co.* v. *Iowa*, 94 U. S. 155, text 162, 24 L. Ed. 94.

The State Engineer is an administrative officer having statutory powers and duties, and when he declines to exercise authority, or to perform duties conferred upon him by law, he may by mandamus, in the absence of another adequate remedy afforded by law, be required, in proper cases duly presented, to proceed with the performance of his duties. In such cases the command is to proceed to perform his duties.

The amendatory act is not in any sense an act to regulate the practice of courts of justice so as to make the said act objectionable under sub-section 6 of Art. 6, Sec. 26 of the Constitution of Utah, providing that:

"* * * The Legislature is prohibited from enacting any private or special laws in the following cases * * * Regulating the practice of courts of justice. * * *"

And, then, as pointed out by plaintiffs on page 14 of their reply brief:

"* * * If perchance the state engineer should find himself short of funds, as defendants insist might occur, the court may appoint assistants to aid the state engineer. * * *"

Upon his failure, and upon the record made, the district court may proceed to administer such relief as the circumstances may require.

This court will not determine questions of fact, presented by evidence submitted in this court to establish any allegation of the complaint any more than it will determine the sufficiency of the allegations in the complaint, except so far as to determine jurisdictional questions.

We, therefore, hold the District Court of Salt Lake County has jurisdiction to proceed.

This, however, being a suit for the determination of water rights the District Court should proceed as provided by statute relating to the determination of the water rights in the drainage area of the Utah Lake and Jordan River.

If, however, the State Engineer either refuses to perform his duties as provided by law in general adjudication, or makes a showing to the court that he is unable to proceed, furnishing satisfactory reasons therefor, then the court may proceed as in an equity case to determine the rights as to parties; and that defendants have a plain, speedy and adequate remedy under the statute, and they have not been, and will not be, denied any right without due process of law, and that the action provided by statute is the exclusive

remedy for a general adjudication of water rights in Utah; and the procedure provided by Chap. 112, Laws of Utah 1939, is retrospective and applicable to this case, and, of course, is mandatory in all future cases. The duties of the State Engineer is not a delegation of judicial powers to the executive branch of the State, or a usurpation of the prerogatives of the district courts, and must be followed by the court as an aid to it in the determination of the rights of the respective parties.

We quote approvingly from pages 13 and 14 of plaintiffs' reply brief as follows:

"Moreover, in any event there will be no occasion for defendants to start all over again for a third time to redress the wrongs of which they complain. If, as we contend, the present cause should be converted into a general adjudication suit, there would be no occasion to start over again. There would be no abatement of the present suit. The validity of what has been done will not be rendered invalid. The rule is well established that a statute which merely changes the procedural matters does not invalidate what has been done, merely relquires that the provisions of the new statute must be followed after the same takes effect."

"In the case of *Salt Lake Coffee & Spice Co.* v. *District Court*, 44 Utah 411, 140 P. 666 [669], this Court had a similar question presented for determination," and, cited approvingly the following rule: " 'If before final decision a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings. But the steps already taken, and the status of the case as to the court in which it was commenced, the pleadings put in, and all things done under the late law, will stand, unless an intention to the contrary is plainly manifest; and pending cases are only affected by general words as to future proceedings from the point reached when the new law intervened' ".

The allegation of the complaint purporting to allege equitable grounds of relief have nothing to do with defendants basic causes of action in the District Court, but are allegations entirely immaterial, irrelevant and redundant to the said causes of action, and are tacked on to give color to a pseudo issue, and should be regarded as surplusage,

and should be stricken out of the complaint on the motion of any interested party, or by the court, on its own motion.

Let peremptory writ of prohibition issue in accordance with this opinion. Plaintiffs to recover their costs. And, such is the order of this court.

WOLFE, Justice (concurring).

I concur in the result reached. I appreciate the scholarly work done by the writer of the main opinion but I am not sure that all of the matters therein treated are necessary to the result. Rather than enter into the plenary task of a critical appraisal of the statements therein made, I may better state briefly my reasons for arriving at the same conclusions.

The adjudication of a river, that is, determination of the rights of appropriators from a river and its tributaries and the relative priorities of such rights, is statutory and in nature administrative. A brief advertence to the scheme laid down for the adjudication of water rights may be helpful. By Sec. 20, Chap. 67, Laws of Utah 1919, the action for *adjudication of all water rights in a river* was started by a petition to the State Engineer. By Sec. 21, upon completion of his survey, the State Engineer initiated the court proceeding by bringing "an action in the district court". Also under Sec. 22 "upon the filing of *any* suit for the *determination of water rights*" the clerk was required to notify the State Engineer, whereupon the State Engineer was required to file with the court a list of all claimants as far as known. The clerk also was required to publish notice that "such a petition has been filed, naming and describing the river system or water source involved and requiring claimants to the use of water therefrom to notify the State Engineer of their names and addresses for the purpose hereinafter set forth." (Italics added.) After that the clerk was to give notice to all the claimants as far as known of "the date when the State Engineer will begin the survey of the system or water source * * * or the *fact that such survey has* * * *

*been completed,* as the case may be * * *." (Italics added.) Hence, the 1919 Act endeavored to provide for the initiation of an action for the adjudication of the river by a verified petition to the State Engineer. It also provided for converting into a general adjudication, a court action for the determination of water rights. Whether the adjudication arose out of a petition to the State Engineer or arose out of an action filed for the adjudication of water rights, the administrative features of the proceedings came together in Sec. 22. Whether Sec. 22 of Chap. 67, Laws of Utah 1919, really meant that the State Engineer was to be brought into every suit for the adjudication of water rights and the same turned into a general adjudication of the river is doubtful, although a literal reading of Sec. 22 would reach that result, unless the phrase "determination of water rights" has a different signification as used in the statutes than the term "adjudication of water rights". It may be that a suit to quiet title to water as between A and B or involving a controversy over a single right is a suit of a different nature from one for the "determination of water rights" as meant by the statute. The latter term may itself imply the idea of relative rights and priorities in a stream or part of a stream rather than a controversy at to whether A. B or C is entitled to *a* water right. Such interpretation would give some sense to Sec. 22 of Chap. 67, Laws of Utah 1919. But it may have been this very doubt which inspired the Code Commission to insert the amendment "if so ordered by the court". And the fact that throughout Sec. 22 it speaks of the "claimants to the use of water from the *river system* or *water source* involved in such action" gives countenance to the idea that the type of suit meant was one other than that involving a mere adjudication of a particular water right. At all events when an action became one to adjudicate the river—an adjudication largely in res, rather than an adjudication to quiet title between two or more claimants of the same water right, the proceedings were the child of a statute and not of equity. And that is

true of the 1919 Statute, the 1933 Revision, and the 1939 Amendment.

In the action brought by the defendants to this petition which, in form, appears to be a suit to quiet title and to restrain winter flooding, the prayer reveals it to be actually a suit to adjudge the "right or rights of each defendant [plaintiffs in this application representing some 2,000 of them] herein to divert or use water from Utah Lake or its tributaries" and that the "right and title of each plaintiff herein [defendants in this application] to the use of water from Utah Lake and its tributaries be determined and quieted and that said rights and title be adjudged and decreed to be superior to any right or rights of any defendant herein to the use of said water initiated subsequent to the date when the rights of such plaintiff were initiated." It is difficult to see how this can be anything but an action to determine the relative rights of the *whole* water shed involving the Provo River, Spanish Fork River, Utah Lake and Jordan River. The objectives are what they would be under Chap. 4 of Titile 100, R. S. U. 1933, as amended by Chap. 112, Laws of Utah 1939. It is true that the complaint alleges waste of water which should flow into Utah Lake because of winter flooding and "wrongful and unlawful diversions." The simple question of whether one or a number are wasting water may perhaps be tried in a suit without determination of relative rights or priorities but this suit conceives of an adjudication of relative rights over the whole water shed.

We know that there has been a determination of water rights of all appropriators of the Provo River and its tributaries. Certainly such decree fixes the rights and priorities only among such appropriators. What would be the effect among these appropriators if appropriators of an extension of the river system were intruded into the controversy, is itself a question. If the tributaries to Utah Lake were considered in themselves separate water systems rather than parts of a larger whole system, the legal conclusions might

vary from those arrived at if the system of rivers were considered a unit for appropriation, with the Utah Lake only an intermediary link. In the former case it might well be that defendants here could only attack waste. They might not, even if prior to those on the tributaries, be able to stagger their appropriation dates with those of the appropriators of the tributaries or upset rights and priorities fixed by users of the various river systems flowing into Utah Lake on the theory that appropriators from Jordan River or Utah Lake, even though prior to those of the tributaries, could not compel those of the tributaries to supply what nature, through drought or lake evaporation, denied the lower appropriators. The fact that the lower appropriators take the view that Utah Lake and all of the streams flowing in or out of it is one unit system and desire rights and priorities to be fixed among all users treated as appropriators from a unit system, gives their suit the aspect of one for the adjudication of a whole water shed which is certainly as statutory as one to adjudicate a river system. It is for these reasons that I think we must conclude that the suit started by these defendants was one for the adjudication of the rivers and lake as a whole and not one in equity for the quieting of title or preventing damage. The theory of a river system adjudication is to fix each appropriator's rights and priorities so it will be definitely known whether he is or is not injuring another by taking his water. While it partakes of the nature of a declaratory judgment in many of its aspects, it also involves a number of local controversies which, instead of being tried as individual suits, are tried on objections to the findings of the State Engineer, all in one overarching suit. For the reason that there are involved numerous local controversies which are adjudicated by the decree and a declaratory judgment in reference to uncontested findings, thus combining not only many controversies in one suit but controverted and uncontroverted adjudications in the same suit, provision had to be made by statute. And the

offices of the State Engineer to make a survey and ground his findings upon it, which then constituted the arena of controversy, were engaged so as to lessen the costs which might be prohibitive if each user must employ counsel to represent him in the preparation and trial of all these numerous suits within a suit. The scheme was to substitute centripetal instead of centrifugal action; to constitute the State Engineer the officer whose survey and findings would separate the contestants from the non-contestants and in that manner alone save endless effort and time which would ensue if it were done in a court room, and to make him a preliminary arbitrator of such disputes, the action of the court being on his findings when the same were contested. This seems to be a case pre-eminently suited to that procedure.

Therefore, in this state there is an exclusive statutory method provided for the determination of relative rights in a river system which, while simulating equity procedure, was not encompassed within what is conceived to be the scope of equitable jurisprudence. And the fact that the proceeding was started not through the State Engineer but under the guise of an equity suit does not seem to make it a non-statutory action. What is sought to be accomplished determines its nature. Nor do I think the change made by the 1933 Revision of our Code gave the court discretionary power to require the State Engineer to make the survey and findings or gave it power to treat what was by its nature a suit for the adjudication of a river as an equitable action. The nature of the action would be the same—statutory and not equitable. When changed back by Chap. 112, Laws of Utah 1939, the test was still the same under Sec. 100-4-3, that is, was the suit by nature basically one for the redress of a wrong, for the quieting of title of a particular right or rights or for the determination of all the relative rights and priorities in the river system. If it was the latter it must be treated as a court function derived from Sec. 100-4-3; if the former, whether it could be con-

verted into the latter sort of action and under what circumstances need not now be decided.

The change made by Chap. 112, Laws of Utah 1939, during the pending of the action in the lower court, is a change in procedure which must be followed. Plaintiffs below have no vested rights in procedure. *Boucofski* v. *Jacobsen*, 36 Utah 165, 104 P. 117, 26 L. R. A., N. S., 898. The fact that they may have spent money which they otherwise would not have spent in making surveys is unfortunate but that is one of the chances which arises by virtue of the paramount right of the legislature to vary procedure. No substantive rights of said parties are affected by the change in procedure. If, in the middle of a judicial receivership proceeding for a defunct bank, the legislature should make the Bank Commissioner the statutory receiver, the acting receiver appointed by the court could be compelled to turn over the assets and make accounting to the statutory receiver. The further liquidation of the bank would be under the new procedure. It could not be maintained that constitutional rights were being interferred with on the theory that a court of equity was being robbed of its jurisdiction to appoint a receiver, or on the theory that such act was a private or special regulation of the practices of the courts of justice, or on the theory that the creditors or the bank had a right to continue under the procedure under which they started.

This action being a creature of statute and not of equitable jurisprudence, it becomes unnecessary to treat of the question as to whether the legislature may detract from its powers previously exercised by equity. But in that regard, the anti-injunction Acts relating to labor disputes, I believe, have generally been held constitutional.

PRATT, Justice (concurring in result).

Counsel for defendants introduce their statement of the case, thus:

"As appears from the admitted allegations contained in the pleadings herein, the corporate defendants, on May 28, 1936, instituted *a suit in equity for a general adjudication of all water rights* in Utah Lake and its tributaries and for injunctive relief, * * *." (Italics added.)

Is there such equitable relief in this State? I am not concerned with the procedural question of the form of the action it should take, if there is — I am concerned with the question of whether or not there is. For me, as a user upon any water system, to seek equity, I must show a violation of my rights, the legal remedy for which is inadequate. I shall assume that that of which I complain — if I have a valid complaint — can be remedied only in equity. But of what have I complaint that entitles me to bring into court all the users upon the water system? Such rights as I have to the use of water are not the result of a procedural statue enacted for the purpose of providing a means of obtaining a general adjudication of water rights on any given water system. They exist quite aside from that. They existed prior to it.

If I complain that each and every user on the system has injured me and is going to continue injuring me—a highly improbable situation—I am not seeking a general adjudication of water rights; I am doing nothing more than instituting a private suit against numerous defendants for the redress of my past injuries or the prevention of probable future injury to me. Such is the nature of the suit filed by defendants May 28, 1936, although they ask a general adjudication.

It is true that the court may, in his discretion, make of my suit a general adjudication pursuant to Sec 100-4-18, R. S. U. 1933, but that is a matter that he may determine to do if he believes it to be of sufficient public interest. If that is done by him, something more is decided than merely the question of whether or not the other users have violated my rights. Their relationships to each other are determined as well. With that determination I am not con-

cerned to the extent that I can insist upon its being done. I have no cause of action as such water user whereby I may compel two or more of my neighbors to adjudicate their differences, when such differences do not affect my right to the use of the water.

Title 100 of R. S. U. 1933 has placed in the hands of public officers the duty of deciding whether or not it is to the public interest to have a general adjudication of water rights. The water user is interested only to the extent measured by the statute. He may petition the State Engineer as provided in Sec. 100-4-1, but the latter has discretion in the matter. If the water user institutes a private suit, the court may in its discretion turn it into a general adjudication. Sec. 100-4-18. Further than that, the water user as such user, has no right to a general adjudication. When he has petitioned or instituted the suit, he has exercised his right. There is nothing left upon which he can predicate an action for equitable relief in the nature of a general adjudication should either officer in his discretion deny him relief. He cannot show a violation of any rights for which such an adjudication is the remedy. It is the public interest that induces such an adjudication, not his private interests.

If the engineer institutes such an action under Sec. 100-4-1, or the court directs such proceedings under 100-4-18, there is but one thing to be done: Make the adjudication as prescribed by the statute. There is no question of the equitable powers of the court involved. The last clause of Section 100-4-3 means what is says:

"* * * and the court shall proceed to determine the water rights involved in the manner provided by this chapter *and not otherwise.*" Laws of Utah 1939, c. 112. (Italics added.)

I see no harm in an order to show cause as a means of enabling the trial court to determine whether or not he should order a general adjudication pursuant to statute; but if he is seeking to generally adjudicate the waters of a

water system through equitable rather than statutory proceedings, as argued before us, then prohibition should issue.

MOFFAT, Chief Justice (dissenting).

The alternative writ should be recalled and the permanent writ denied.

LARSON, Justice (dissenting).

I agree that a private party cannot institute an action and demand a general adjudication of all water rights on a stream. Such action can only be instituted at the instance of the State Engineer, or by the District Court itself when it is convinced in a matter pending before it that the public interest requires a general adjudication. In either event the action must then proceed as provided by the statute. We have not before us here the question of the sufficiency of the pleadings in the action in the District Court, but it appears that issue has not been joined there. We should therefore not make any ruling or findings with respect to such pleadings nor with respect to the question as to whether or not the District Court can or should proceed in this action with a general adjudication of the water rights on the Utah Lake-Jordan River Drainage Area. From what appears in the record before us the suit in the District Court is merely a private law suit by an appropriator of water against junior appropriators who are alleged to be interfering with the rights of such senior appropriator. That there is sufficient water to supply the rights of all the plaintiffs in the District Court action and all appropriators senior to them is apparent from the pleadings in the case before us. As far as the record here reveals, there is no showing of any public interest involved. It would seem that as long as there is sufficient water to supply the rights of any appropriator, he cannot complain of the nature or extent of the use any other appropriator makes of the rest of the waters of the stream. It must follow therefore

that a senior appropriator cannot seek an adjudication of the water duty or the needs or extent of use of junior appropriators. When his senior rights are supplied he has no interest in by whom or how the other waters are used. He therefore cannot demand an adjudication of rights as between junior appropriators, or as between a junior appropriator and the public. On the other hand, a junior appropriator, whose rights are not filled because the senior appropriators divert so much of the flow that there is not enough left to supply his rights, may probably ask an adjudication of the extent of the needs of, and beneficial use by, the senior appropriators to secure if possible the rights under his appropriation. The writ here issued should be recalled.

McDONOUGH, Justice, being disqualified, did not participate herein.